## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| THG Holdings LLC, *et al.*, | Case No. 19-11689 (JTD) |
| Debtors.[1] | Joint Administration Requested |
| | **Requested Hearing Date:**<br>**August 16,  2019**<br>**Requested Objection Deadline:**<br>**August 9, 2019 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR (I) AN ORDER
PURSUANT TO SECTIONS 105, 363, 364, 365 AND 541 OF THE
BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004, 6006 AND 9007 AND
DEL. BANKR. L.R. 2002-1 AND 6004-1 (A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS
OF THE DEBTORS; (B) APPROVING PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OR REJECTION OF DESIGNATED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) SCHEDULING
THE AUCTION AND SALE HEARING; (D) APPROVING FORMS AND MANNER
OF NOTICE OF RESPECTIVE DATES, TIMES, AND PLACES IN CONNECTION
THEREWITH; AND (E) GRANTING RELATED RELIEF; (II) AN ORDER
(A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF
CLAIMS, LIENS, AND ENCUMBRANCES; AND (B) APPROVING THE
ASSUMPTION AND ASSIGNMENT OR REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) CERTAIN RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") hereby move (the

"Motion") this Court (as defined below) for entry of an order, in the form attached hereto as

**Exhibit A** (the "Bidding Procedures Order"), (a) approving the bidding procedures (the "Bidding

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: THG Holdings LLC (8292); True Health Group LLC (9158); True Health Clinical LLC (5272); True Health Diagnostics LLC (9452); True Health IP LLC (5427); Outreach Management Solutions LLC d/b/a True Health Outreach (9424); Health Core Financial LLC d/b/a True Health Financial (6614). The Debtors' mailing address is 3803 Parkwood Blvd, Suite 400, Frisco, Texas 75034.

Procedures" attached as **Exhibit 1** to the Bidding Procedures Order[2] in connection with the sale of all or substantially all of the Debtors' assets (the "Purchased Assets"), by which the Debtors will solicit and select the highest or otherwise best offer for the purchase of the Purchased Assets and assumption of the Assumed Liabilities; (b) approving various forms and the manner of notice of respective dates, times and places in connection therewith; (c) approving procedures for the assumption and assignment or rejection of designated executory contracts and unexpired leases (the "Assignment and Rejection Procedures"); (d) scheduling the auction (the "Auction") and the date and time of the hearing to approve the sale (the "Sale Hearing") of the Purchased Assets and assumption of certain liabilities of the Debtors (the "Assumed Liabilities"); (e) authorizing the Debtors to (i) potentially designate a Stalking Horse Bidder (as defined below) in the Debtors' business judgment (upon consultation with (i) the DIP Lenders; (ii) the Subordinated Lenders; and (iii) any official committee of unsecured creditors appointed by the Office of the United States Trustee (a "Committee," and together with the DIP Lenders and the Subordinated Lenders, the "Consultation Parties")) and, upon such designation and consultation with the Consultation Parties, seek Bankruptcy Court approval of any Bid Protections (as defined below) on an emergency basis; and (f) granting related relief.

The Debtors further request that, at the Sale Hearing, this Court enter an order (the "Sale Order"), the proposed form of which will be filed before the Sale Hearing, (i) authorizing the Sale of the Purchased Assets (the "Sale") free and clear of all liens, claims, interests and other encumbrances (collectively, "Encumbrances"); (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (iii) granting related relief. In support of this Motion, the Debtors rely upon and incorporates by reference the *Declaration of Clifford A.*

---

[2] Capitalized terms that are not otherwise defined herein shall have the meanings given to such terms in the Bidding Procedures or the DIP Motion, as applicable.

*Zucker in Support of First Day Relief* (the "<u>First Day Declaration</u>"), which was filed contemporaneously with this Motion.

As discussed herein, the Debtors propose the following timeline for conducting the Sale process:

| Event | Deadline |
|---|---|
| Bidding Procedures Hearing…….……………………….……………... | August [16], 2019 |
| Bid Deadline ……………………………………………………………… | September 13, 2019 |
| Sale Objection Deadline………………………………………………... | September 13, 2019 |
| Assignment Objection Deadline……………………………………….. | September 13, 2019 |
| Auction………………………………………………………………… | September 17, 2019 |
| Sale Hearing (no later than)…………………………………………….. | September 20, 2019 |
| Deadline to Close Proposed Sale Transaction (no later than)…………... | September 30, 2019 |

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[3]  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105, 363, 364, 365, and 541 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and

---

[3] Pursuant to Local Rule 9013-1(f), the Debtors hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

3.     On July 30, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code thereby commencing these cases (the "Chapter

11 Cases").  The Debtors continue to operate their businesses as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment

of a trustee or examiner and no Committee has been appointed in these Chapter 11 Cases.

4.     Founded in 2014, the Debtors are one of the largest independent providers of

laboratory management and diagnostic services in the United States.  The Debtors operate

accredited, full-service clinical laboratories that offer comprehensive testing for biomarkers that

can indicate risk for cardiovascular disease, diabetes, autoimmune disorders, cancer, and other

diseases and health testing services.  By utilizing the Debtors' services, physicians can offer

patients a personalized overview of risk factors and assistance from clinical health consultants to

promote healthy, longer-lasting lifestyles.  The Debtors' mission is to be the leading preventative

healthcare company, providing best-in class diagnostic testing with robust complementary

disease management services to help prevent the progression of chronic disease.

5.     The Debtors offer what they believe may be the most comprehensive test of

biomarkers for cardiovascular, diabetes, and related diseases currently available in the industry.

The Debtors offer more than 400+ tests and have handled over 1,525,000 patient samples.  The

Debtors currently run about 1,370 samples daily through their two facilities.  The Debtors'

maintain state of the art laboratory facilities that are strategically located to allow for rapid

turnaround times and strong customer base.  The Debtors' primary operations are located in

Richmond, Virginia, which includes a 109,000 square foot facility built in 2013 consisting of 52,000 square feet for testing plus offices for billing, research and development, and other administrative functions.  The Debtors also maintain a second laboratory in Frisco, Texas, which is a 7,000 square foot facility and includes 5,000 square feet for testing.  From these two facilities, the Debtors serve approximately 1,250 physician offices located in 46 states plus the District of Columbia.  The advanced testing offered by the Debtors provides a far broader and deeper picture of patient health than traditional testing.  In addition, the Debtors offer an online patient portal that provides interactive reports, live coaching help, patient engagement videos, and lifestyle tracking tools.

### Events Preceding the Chapter 11 Cases

6.     Several factors have negatively impacted the Debtors' financial position and liquidity constraints.  On or around May 25, 2017, the Centers for Medicare and Medicaid Services ("CMS") instituted a 100 percent hold on all Medicare payments to True Health Diagnostics LLC ("THD") without notice, limiting the Debtors' ability to fund their retail lab business. Medicare payments account for a significant portion of the Debtors' total cash receipts. THD provided a rebuttal statement to CMS on or around June 5, 2017.

7.     Approximately one month later, on or around June 23, 2017, CMS reduced its holdback from 100 percent to 35 percent of all Medicare payments.  Even with the reduced suspension, however, the Debtors were forced to seek outside funding to sustain their operations. The Debtors estimate approximately $21 million in receivables have been held back by Medicare since May 2017.

8.     On or about June 13, 2019, CMS imposed a new 100 percent hold on all Medicare payments to THD.  In response, THD sought emergency injunctive relief against CMS in the

United States District Court for the Eastern District of Texas.   Although THD initially was successful in obtaining a temporary restraining order against CMS to preclude CMS from imposing the 100 percent holdback, on July 22, 2019 the District Court denied THD a preliminary injunction and dismissed the action for lack of subject matter jurisdiction.   The continued suspension of all Medicare payments to THD has resulted in irreparable damage to the Debtors' liquidity and their businesses.   Consequently, the Debtors were forced to file for Chapter 11 bankruptcy protection before this Court.

### The Decision to File Chapter 11

9.      The Debtors ultimately concluded that given the significant challenges in achieving positive free cash flows in the near term, the businesses were unlikely to be viable on a stand-alone basis absent a strategic transaction or a restructuring of its debt.   Thus, on July 25, 2019, the Debtors engaged SSG Advisors, LLC ("SSG") as the Debtors' investment banker during the Chapter 11 Cases, subject to Court approval.

10.      The Debtors are running an extensive marketing process.   With the Debtors' retention of SSG, whose marketing strategy will include reengaging parties who previously showed interest in the Purchased Assets in addition to new potential buyers, the Debtors are hopeful that such efforts will result in securing a purchaser of the Debtors' assets and possible stalking horse bidder.   Thus, the Bidding Procedures together with the Bidding Procedures Order, contemplate an open auction, and provide the Debtors with the option, but not a requirement, to enter into a stalking horse bid and designate a stalking horse purchaser in the Debtors' business judgment (after consultation with the Consultation Parties), as more fully set forth below.   This optionality will allow the Debtors to continue to work toward securing a

stalking horse bid as a backstop to the Sale process, while enabling the process to proceed as efficiently and economically as possible.

## **RELIEF REQUESTED**

**A.     Bidding Procedures Order**

11.     By this Motion, the Debtors seek entry of the Bidding Procedures Order: (i) approving the Bidding Procedures; (ii) approving various forms and the manner of notice of respective dates, times and places in connection therewith; (iii) establishing the Assumption and Rejection Procedures; (iv) authorizing the Debtors to designate a Stalking Horse Bidder in the Debtors' business judgment (upon consultation with the Consultation Parties) and seek expedited Bankruptcy Court approval of any Bid Protections (as defined below); (v) approving the Bid Protections; and (iv) scheduling the Auction and a Sale Hearing.

12.     Additionally, by this Motion, the Debtors further request that, at the Sale Hearing, the Court enter the Sale Order.

### **(i)        The Bidding Procedures**

13.     To maximize the value of the Purchased Assets for the benefit of the Debtors' estates and stakeholders, the Debtors seek to implement a competitive bidding process.  As described more fully in the Bidding Procedures and the Bidding Procedures Order, the Debtors seek approval to sell the Purchased Assets to a Qualified Bidder that makes the highest or otherwise best offer for the Purchased Assets.  The Debtors request that competing bids for the Purchased Assets be governed by the Bidding Procedures and Bidding Procedures Order, including the submission of any Stalking Horse Bids (as defined below), which, among other things, collectively establish:

- the requirements that a Potential Bidder (other than a Stalking Horse Bidder) must satisfy to be entitled to participate in the bidding process and become a Qualified Bidder (*see* Bid Proc., at <u>Article III</u>);

- the requirements for a Potential Bidder to submit a Stalking Horse Bid;

- the requirements for Qualified Bidders to submit bids and the method and criteria by which such bids become Qualified Bids (*see* Bid Proc., at <u>Articles III-IV</u>);

- the deadline by which bids must be submitted (*see* Bid Proc., at <u>Article II</u>);

- the procedures for conducting the Auction (*see* Bid Proc., at <u>Articles VII</u>);

- the assumption and assignment procedures for executory contracts and unexpired leases (*see* Bid Proc., at <u>Article IX</u>); and

- various other matters relating to the sale process generally, the Sale Hearing, return of any Good Faith Deposits, and designation of a Back-Up Bidder (*see* Bid Proc., at <u>Articles VIII-XII</u>).

14.     In addition, the Debtors seek the authority, subject to the terms of the Bidding Procedures Order, to accept a stalking horse bid from a Potential Bidder (the "<u>Stalking Horse Bid</u>") and enter into a purchase agreement (the "<u>Stalking Horse Purchase Agreement</u>") with such Potential Bidder (the "<u>Stalking Horse Bidder</u>") in the Debtors' business judgment upon consultation with the Consultation Parties.  As is customary, to enable the Debtors to enter into a Stalking Horse Purchase Agreement, the Debtors foresee that it may be necessary to afford a Stalking Horse Bidder certain bid protections such as a break-up fee ("<u>Break-Up Fee</u>") and expense reimbursement ("<u>Expense Reimbursement</u>" and with the Break-Up Fee, the "<u>Bid Protections</u>").  Therefore, the Debtors, upon the designation of a Stalking Horse, reserve the right in their business judgment to seek Bankruptcy Court approval of any Bid Protections on an expedited basis.

15.     To the extent the Debtors designate a Stalking Horse Bidder (upon consultation with the Consultation Parties), the Debtors shall, within two (2) days thereof, file a notice of such determination with the Bankruptcy Court (the "Stalking Horse Bidder Notice") and seek Bankruptcy Court approval of any Bid Protections on an expedited basis.  The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement in form and substance reasonably acceptable to the DIP Lenders, which competing Qualified Bidders must then use the Stalking Horse Bidder's Qualified Bidder Purchase Agreement as the basis to submit their Qualified Bids, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

16.     The Debtors will select the highest or otherwise best Qualified Bid for substantially all of the Purchased Assets (which may be the Stalking Horse Bid) to be the starting bid at the Auction (the "Baseline Bid") upon consultation with the Consultation Parties.  In no event shall any Qualified Bidder, other than a Stalking Horse Purchaser be entitled to any Bid Protections.

17.     The Bidding Procedures contain the following provisions, some of which are required to be highlighted pursuant to Local Rule 6004-1(c), and which are more fully described in the Bidding Procedures and the Bidding Procedures Order:[4]

> a.     **Provisions Governing Qualification of Bidders**. In order to qualify to submit a Qualified Bid (as defined below) and participate in the Auction, each Potential Bidder must: (i) deliver to the Notice Parties the most current audited (if available) and the latest unaudited financial statements and/or such other financial information evidencing the Potential Bidder's ability to (a) close the Sale within the time period prescribed in the Bidding Procedures Order and Form Purchase Agreement and (b) provide adequate assurance of future performance to counterparties to Transferred Contracts to be assumed and assigned to the

---

[4] These provisions are excerpted from the Bidding Procedures. However, to the extent of any inconsistencies between this summary and the Bidding Procedures, the Bidding Procedures shall govern.

Potential Bidder.  In addition, if the Potential Bidder is an entity formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, the Potential Bidder must deliver to the Notice Parties current audited (if available) and the latest unaudited financial statements and/or such other relevant financial information as may be requested by the Debtors of each equity holder of such Potential Bidder, *which equity holders must also guarantee the obligations of such Potential Bidder on terms reasonably acceptable to the Debtors*, evidencing the Potential Bidder's ability to (x) close the Sale within the time period prescribed in the Bidding Procedures Order and Form Purchase Agreement (or Stalking Horse Bidder Purchase Agreement, as applicable) and (y) provide adequate assurance of future performance to counterparties to Transferred Contracts to be assumed and assigned to the Potential Bidder.

b. **Provisions Governing Qualified Bids**. To participate in the Auction, as set forth in <u>Article IV</u> of the Bidding Procedures, each Potential Bidder (other than a Stalking Horse Bidder) must submit a "<u>Qualified Bid</u>" to the Debtors by the Bid Deadline (as defined below) in accordance with the below requirements.  A Potential Bidder's adherence to the requirements listed below is in the Debtors' discretion (upon consultation with the Consultation Parties); provided, however, such requirements may be waived in the Debtors' reasonable discretion (upon consultation with the Consultation Parties); provided, further, if the DIP Lenders submit a bid for all or any portion of the Purchased Assets, DIP Lenders shall no longer have consultation rights with the Debtors under the Bidding Procedures or the Bidding Procedures Order with respect to such Purchased Assets unless and until the DIP Lenders irrevocably revoke such bid.  A Qualified Bid shall mean a bid submitted by a Qualified Bidder that:

   A. Is made in writing;

   B. Is submitted prior to the Bid Deadline;

   C. Designates which of the Purchased Assets the Qualified Bidder proposes to purchase;

   D. Designates which of the Assumed Liabilities the Qualified Bidder proposes to assume;

   E. Designates which of the Transferred Contracts the Qualified Bidder proposes to have assumed and assigned to it and which Transferred Contracts it wishes the Debtors to reject, if it is the Successful Bidder (as defined below), or the Debtors' rights and interests therein sold and transferred, as the case may be;

   F. Includes a binding, definitive and fully executed asset purchase agreement which (a) shall be in form and substance substantially similar to the Form Purchase Agreement or Stalking Horse Bidder

Purchase Agreement, as applicable, and marked to reflect only those changes required as a condition of such Qualified Bidder's to closing the Sale, (b) except for a Stalking Horse Bidder, shall not contain any provisions entitling such Qualified Bidder to any break-up fee, expense reimbursement or other bid protections of any kind (c) waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of the bid or participation in any auction, and (d) otherwise contains terms and conditions that are more favorable to the Debtors than those set forth in the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable.  An asset purchase agreement, together with its schedules and exhibits, submitted in accordance with these Bidding Procedures, shall be referred to herein as a "<u>Qualified Bidder Purchase Agreement</u>".

G. To the extent a bid is for assets that are subject to a Stalking Horse Bid, the value of the purchase price included in such bid must equal at least the value of the purchase price set forth in such Stalking Horse Bid <u>plus</u> the amount of the Bid Protections provided to such Stalking Horse Bidder, as set forth in the Stalking Horse Bidder Notice describing such Stalking Horse Bid, <u>plus</u> the Overbid Amount (as defined below);

H. To the extent a prospective bidder is holding a perfected security interest in any of the Debtors' assets, such prospective bidder may seek to credit bid all or a portion of its claims for its respective collateral (each such bid, a "<u>Credit Bid</u>") in accordance with section 363(k) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"); <u>provided</u>, <u>that</u>, (i) a Credit Bid may only be applied to reduce the cash consideration for the Debtors' assets in which the credit bidding party holds a perfected security interest; (ii) a Credit Bid must comply with, and shall be subject to, the terms of the DIP Orders;

I. Unless a bid includes a Credit Bid, provides that the purchase price shall be paid in full in cash and/or non-cash consideration at the closing of the Sale; provided, however, that the value for such non-cash consideration shall be determined by the Debtors upon consultation with the Consultation Parties;

J. Provides a good faith cash deposit (the "<u>Good Faith Deposit</u>") equal to 10% of the value of the Qualified Bidder's total proposed purchase price.  The Good Faith Deposit shall be paid by wire transfer to a segregated account at an escrow agent to be designated by the Debtors, pursuant to instructions to be provided upon request by a Qualified Bidder.  The Debtors reserve the right to increase, decrease or waive the Good Faith Deposit for one or more Qualified Bidders upon consultation with the Consultation Parties.  Such Qualified Bidder's Qualified Bidder Purchase Agreement shall provide that the Good Faith

11

Deposit shall be forfeited to the Debtors in the event of a breach thereof (after giving effect to any applicable notice and cure periods) by such Qualified Bidder;

K.   Provides that such bid shall be open and irrevocable until the earlier of:

1.   such bid being determined by the Debtors not to be a Qualified Bid;

2.   if such bid is not chosen by the Debtors at the Auction to be the Successful Bid or Back-Up Bid (as each such term is defined below), the date of entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder;

3.   if such bid is chosen by the Debtors to be the Successful Bid, the date which is the earlier to occur of: (i) the closing of the Sale to such Successful Bidder, and (ii) two days following the date the order approving the Sale to the Successful Bidder shall have become a final, non-appealable, order ("Final Order");

4.   if such bid is chosen by the Debtors to be the Back-Up Bid, the date which is the earlier to occur of: (i) the date of closing on the Sale to the Successful Bidder, and (ii) twenty-five (25) Business Days following the date the order approving the Sale to the Successful Bidder shall have become a Final Order; provided, that if the Successful Bidder shall fail to close on its purchase of the Purchased Assets during the period set forth above, (x) the Back-Up Bid shall continue to remain open and irrevocable, (y) the Back-Up Bidder shall be deemed to be the Successful Bidder, and (z) it shall close on the Sale within ten (10) Business Days of becoming the Successful Bidder;

L.   (i) Includes an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct all due diligence regarding the Debtors' assets prior to submitting its bid and that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid, and (ii) confirms the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the Sale and does not include any due diligence contingencies;

M.   Does not contain any financing contingencies or any other contingencies not set forth in the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable;

N. Provides evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) evidencing the authority of the Qualified Bidder to make a binding and irrevocable Qualified Bid and to consummate the Sale if such Qualified Bidder is the Successful Bidder or Back-Up Bidder, as such bid may be improved prior to or at the Auction;

O. Confirms that the Sale will be completed in accordance with the timing set forth in the Bidding Procedures Order;

P. If the Qualified Bidder was formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, provides evidence which is reasonably satisfactory to the Debtors, from each of the equity holders of such Qualified Bidder demonstrating that such Qualified Bidder has, or will have access to, the financial resources needed to consummate the Sale if it becomes the Successful Bidder, and that the use of such resources to consummate the Sale has been authorized and approved by such entity's board of directors (or comparable governing body);

Q. Certifies that the Qualified Bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale; except that the Debtors may facilitate a submission of a Qualified Bid by one or more unrelated Qualified Bidders;

R. Is not conditioned on the receipt of any third party approvals or consents (excluding required Bankruptcy Court approval and required governmental, licensing or regulatory approval or consent, if any) other than third party approvals or consents that are deemed reasonable, as determined by the Debtors upon consultation with the Consultation Parties; and

S. Sets forth the representatives that are authorized to appear and act on behalf of such Qualified Bidder in connection with the proposed transaction and the Auction.

c. **Modification of Bid and Auction Procedures**. The Debtors are authorized to amend and modify these Bidding Procedures to impose additional terms and conditions on the proposed Auction and Sale of the Purchased Assets and assumption of the Assumed Liabilities (including the assumption and assignment of the Transferred Contracts), to account for any designation of a Stalking Horse Bidder, or to modify or eliminate any of the terms and conditions contained herein if, (i) in the Debtors' reasonable business judgment (upon consultation with the Consultation Parties), such modifications would be in the best interest of the Debtor's estate and promote an open and fair sale Auction and Sale process including with respect to any Stalking Horse Bid and (ii) such modifications

13

and/or additional terms and conditions are not materially inconsistent with the provisions of the Bidding Procedures Order. Notwithstanding anything herein to the contrary, the Debtors may consider and accept bids from a single Qualified Bidder or from multiple Qualified Bidders for less than all or substantially all of the Purchased Assets.

d. **Closing with Alternative Backup Bidders**. Following the close of the Auction, if the Successful Bidder fails to consummate the Sale, and such failure is the result of a breach by the Successful Bidder of its obligations under its Qualified Bidder Purchase Agreement, the Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors as liquidated damages in accordance with the terms of such agreement, and the Debtors shall have the right to pursue all of its rights and remedies against the Successful Bidder. If the Back-Up Bidder is later designated by the Debtors to be the Successful Bidder, the foregoing shall be read to apply to the Back-Up Bidder (and its guarantors, if any) in its capacity as the Successful Bidder.

e. **Good Faith Deposits; Back-Up Bidder**. The Debtors shall return the Good Faith Deposits (with interest thereon at the rate specified, if any, in the escrow agreement) of all Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, within five (5) Business Days following entry by the Bankruptcy Court of an order authorizing the Sale to the Successful Bidder. Subject to Article X, the Good Faith Deposit of the Successful Bidder (with any interest accrued thereon as specified in the escrow agreement) shall be applied to, and deducted from, the Successful Bidder's obligations under the Successful Bid at the closing of the Sale. The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder (with any interest accrued thereon as specified in the escrow agreement) within five (5) Business Days following the date its bid is no longer required to be open and irrevocable as set forth in Article IV(I). If the Back-Up Bidder is subsequently designated by the Debtor as the Successful Bidder as a result of the failure of the Successful Bidder to close on the Sale within the time period set forth in Article IV(I), the Back-Up Bidder shall be deemed to be the Successful Bidder and the Debtor and the Back-Up Bidder shall close the Sale within ten (10) Business Days of the Back-Up Bidder becoming the Successful Bidder. Subject to Article X, the Good Faith Deposit of the Back-Up Bidder shall be held in escrow until such closing and applied (with any interest accrued thereon as specified in the escrow agreement) to its obligations at the closing of the Sale. The Debtors reserve all of its rights regarding the return of all Good Faith Deposits, and the failure by the Debtors to timely return any deposit(s) shall not serve as a claim for breach of any bid(s) or create any default in favor of any bidder(s).

f. **Stalking Horse**. As set forth in the Bidding Procedures and Bidding Procedures Order, the Debtors have the option to, but are not required to, designate a Stalking Horse Bidder in the Debtors' business judgment upon consultation with Consultation Parties and upon such designation and consultation with the

Consultation Parties, seek Bankruptcy Court approval of any Bid Protections on an expedited basis.  To the extent the Debtors designate a Stalking Horse Bidder upon consultation with the Consultation Parties, the Debtors shall within two (2) days thereof file the Stalking Horse Bidder Notice and seek Bankruptcy Court approval of any Bid Protections on an emergency basis.  The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement, which competing Qualified Bidders must then use the Stalking Horse Bidder's Qualified Bidder Purchase Agreement as the basis to submit their Qualified Bids, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid. Notwithstanding that it may contain terms and conditions which may be inconsistent with the above requirements for a Qualified Bid or other provisions of the Bidding Procedures, if the Debtors accept a Stalking Horse Bid such Stalking Horse Bid shall be deemed to constitute a Qualified Bid and such Stalking Horse Bidder shall be deemed to be a Qualified Bidder.

g. **Provisions Governing the Auction**. If the Debtors receive only one (1) Bid that is a Qualified Bid, the Debtors, in their business judgment upon consultation with the Consultation Parties, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) the Debtors shall seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement.  If the Debtors receive two (2) or more Qualified Bids, the Debtors will conduct an auction (the "Auction").

**(ii)        Assumption and Assignment Procedures**

18.    The Debtors are seeking approval of the Assumption and Assignment Procedures for notifying counterparties to executory contracts and unexpired leases of proposed Cure Amounts (as defined below) with respect to those executory contracts and unexpired leases that the Debtors propose to assume and assign to the Successful Bidder (the "Transferred Contracts").

19.    As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors will file a notice of potential assumption, assignment and/or transfer of the executory contracts and unexpired leases listed therein (such list, the "Transferred Contract and Cure Schedule"), substantially in the form attached as **Exhibit A** to the Notice of Proposed (I) Assumption and Assignment of Designated Executory Contracts and Unexpired Leases (II) Rejection of Contracts (the "Assignment and Rejection Notice"), attached as **Exhibit 3** to the

Bidding Procedures Order, and serve such notice on all non-debtor parties to the Transferred Contracts (the "Contract Counterparties"). The Assignment and Rejection Notice served on each Contract Counterparty shall (i) identify each Transferred Contract; (ii) list the proposed cure amounts, if any, that the Debtors believe must be paid to cure all defaults outstanding under each Transferred Contract (the "Cure Amounts") as of such date; (iii) include a statement that assumption and assignment of such Transferred Contract is not required or guaranteed; and (iv) inform such Contract Counterparty of the requirement to file any Assignment Objection (defined below) by the Assignment Objection Deadline (as defined below). Service of the Transferred Contract and Cure Schedule upon a Contract Counterparty does not constitute an admission that a particular Transferred Contract is an executory contract or unexpired lease of property, or confirm that the Debtor is required to assume and/or assign such Contract.

20.     According to the Assignment and Rejection Notice, a Contract Counterparty must file any objection to the Cure Amount or the assumption and assignment of such Transferred Contract by September 17, 2019 (the "Assignment Objection Deadline"). In addition, if the Successful Bidder or Back-Up Bidder, in accordance with the Bidding Procedures, identifies additional executory contracts or unexpired leases that it wishes to add to the Transferred Contracts and Cure Schedule (each an "Additional Contract") (or wishes to remove a Transferred Contract from the Transferred Contracts and Cure Schedule) and notifies the Debtors up to, but no later than, September 30, 2019 (the "Closing Date"), the Debtors shall, within two (2) calendar days of being informed of such a determination, send a supplemental Assignment and Rejection Notice to the applicable Contract Counterparties to such executory contracts or unexpired leases added or removed from the Transferred Contracts and Cure Schedule. To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful

Bidder, the Debtors will, in their reasonable discretion, either reject such unassigned executory contract or unexpired lease, or sell or transfer such unassigned executory contract or unexpired lease to the extent permitted by applicable law.  In no event will the Successful Bidder be responsible for any unassigned executory contracts or unexpired leases.

21.    The Debtors request that the Court require that any objections to the assumption and assignment, or sale and transfer, of the Debtors' rights and interests of and in any of the Transferred Contracts (each, an "Assignment Objection") must: (i) be made in writing and filed on the docket no later than the Assignment Objection Deadline, (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number and email address), (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served on the parties set forth in the Bidding Procedures, so as to be actually received on or before 4:00 p.m. (prevailing Eastern Time) on the Assignment Objection Deadline.

22.    In addition, the Debtors request that objections from any Contract Counterparty to an Additional Contract (an "Additional Assignment Objection") must: (i) be made in writing and filed on the docket no later than ten (10) calendar days after the Debtors have sent notice to such Contract Counterparty of its intention to assume and assign or reject such Additional Contract (as applicable, the "Additional Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served upon counsel to: (a) the Debtors and the United States Trustee (addresses for the

17

foregoing are set forth in the Bidding Procedures), and (b) the Successful Bidder, and the Back-Up Bidder (addresses for the foregoing may be obtained from the Debtors' counsel), so as to be actually received on or before 4:00 p.m. (prevailing Eastern Time) on the Additional Assignment Objection Deadline.

23.    The Assignment and Rejection Notice shall also provide that Assignment Objections, if any, will be heard at a hearing to be held (i) on September 20, 2019, or (ii) on such other date, as the Debtors may designate prior to or after the Sale Hearing.  Any supplemental Assignment and Rejection Notice relating to an Additional Contract shall provide that Additional Assignment Objections will be resolved at a hearing to be held by the Court (i) on or before five (5) calendar days from the timely filing of the Additional Assignment Objection or (ii) such other date designated by the Court.

24.    At the Sale Hearing, the Debtors or the Successful Bidder shall (i) present evidence necessary to demonstrate adequate assurance of future performance by the Successful Bidder and (ii) request entry of an order approving the assumption and assignment of any or all Transferred Contracts to be assumed and assigned to the Successful Bidder.  For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of all parties-in-interest.

**(iii)    Scheduling and Notice**

25.    Pursuant to the DIP Loan Agreement, the Debtors are required to obtain entry of the Bidding Procedures Order on or before August 24, 2019, or such later date as may be consented to by the DIP Lenders, which order shall (i) establish the deadline for submission of bids as September 13, 2019 (the "Bid Deadline"), (ii) fix the date of the Auction, if necessary, to be no later than sixty (55) days after the Petition Date, or such later date as may be consented to

by the DIP Lenders, (iii) fix the date of the Sale Hearing to be no later than September 20, 2019, and (iv) fix the date to obtain entry of an order approving the Sale ("Final Order"), or such later date as may be consented to by the DIP Lenders.  In addition, the DIP Loan Agreement requires that the closing on the Sale is to occur no later than two (2) days after the entry of the Final Order, or such later date as may be consented to by the DIP Lenders.

26.     Given the Debtors' marketing efforts, the proposed timeline is sufficient to complete a fair and open sale process that will maximize the value received for the Purchased Assets.  Due to the specialization of and regulatory requirements governing the Debtors' industry, the most likely bidders are a focused group of specialized providers of healthcare services.  Thus, the marketing period contemplated by this Motion is designed to reach such potential bidders quickly and maximize the value received for the Purchased Assets.

27.     **Notice of Sale Hearing**.  On the date the notice of this Motion is filed, the Debtors will cause this Motion and all exhibits hereto, the Bidding Procedures and a copy of the proposed Bidding Procedures Order, to be served upon (a) the United States Trustee for the District of Delaware; (b) counsel to the Prepetition Lenders and DIP Lenders, Proskauer Rose LLP, (c) counsel to the Subordinated Lenders, (d) the creditors listed on the Debtors' consolidated list of thirty (30) largest unsecured creditors, as filed with the Debtors' chapter 11 petitions; (e) all parties asserting a security interest in the Purchased Assets to the extent any such interest is reasonably known to the Debtors; (f) various federal, state, county and city tax and regulatory authorities; (g) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets or that have been identified by the Debtors or their advisors as a potential purchaser of the Purchased Assets; (h) the United States Department of Health and Human Services and the Centers for Medicare and Medicaid Services; (i) local, state and federal

authorities and agencies that have issued licenses or permits to the Debtors with respect to the operation and use of the Purchased Assets; (j) the contract counterparties whose contracts are identified as being assigned; (k) all of the Debtors' creditors, and (l) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Sale Notice Parties</u>").

28.     **Notice of Sale**.  Within three (3) days of the entry of the Bidding Procedures Order, or as soon thereafter as practicable, the Debtors shall cause to be served, by first-class mail, postage prepaid, a sale notice (the "<u>Sale Notice</u>") setting forth, among other things, the dates established for submission of Qualified Bids, the Auction and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **<u>Exhibit 2</u>**, upon the Sale Notice Parties, provided that the Debtors shall not be required to serve the Sale Notice on the patient claimants.  Further, within three (3) days of the entry of the Bidding Procedures Order, the Debtors will cause the Sale Notice to be published (with such reasonable modifications as are necessary or appropriate for publication) on the claims and noticing agent website at https://dm.epiq11.com/case/TrueHealth/info (the "<u>Case Website</u>").

29.     **Post-Auction Supplement**.  Following the Auction, the Debtors will promptly file with the Bankruptcy Court a supplement (the "<u>Supplement</u>") that will inform the Bankruptcy Court of the results of the Auction.  The Supplement will identify the Successful Bidder as the proposed purchaser of the Purchased Assets and attach (i) any revised proposed Sale Order approving the Sale to the Successful Bidder, (ii) a copy of the Qualified Bidder Purchase Agreement entered into by the Debtors and the Successful Bidder following the Auction, and (iii) any additional information or documentation relevant to the Successful Bid.   The Supplement will also identify the Back-Up Bidder and the Back-Up Bid.  The Debtors will file the Supplement on the docket for the Chapter 11 Cases as promptly as is reasonably practicable

prior to the Sale Hearing, but will not be required to serve the same on any parties-in-interest in the Chapter 11 Cases.

**C.**     **Sale Order**

30.     To ensure the Debtors are in compliance with the DIP Loan Agreement, and in light of the Debtors' limited liquidity, the Debtors request that this Court set the Sale Hearing for a date that is not later than September 20, 2019.  At the Sale Hearing, the Debtors intend to seek entry of the Sale Order (A) approving the Sale free and clear of all Encumbrances, and (B) authorizing the assumption and assignment of the Transferred Contracts, among other things. Pursuant to the Sale Order, the Debtors will sell their assets free and clear of all Encumbrances to the fullest extent possible pursuant to Bankruptcy Code section 363(f), including without limitation, successor liability or similar theories (except for those Assumed Liabilities and obligations expressly assumed by the Successful Bidder) and the Successful Bidder will be protected from liability for and cannot be pursued for any claims owed by the Debtors.  In addition, the Sale Order will have findings that the Sale is not a fraudulent conveyance.  The Bidding Procedures provide proper and adequate notice for these and the other terms and conditions of the bidding, Auction and Sale processes.

## BASIS FOR RELIEF REQUESTED

**A.**     **Approval of the Sale is Warranted under Bankruptcy Code Section 363(b) and the Bidding Procedures are Appropriate and in the Best Interests of the Debtors' Estates and their Creditors.**

31.     Section 363(b)(1) of the Bankruptcy Code provides that, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . . " 11 U.S.C. § 363(b)(1).  Bankruptcy Code section 105(a) further provides, in

relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §105.

32.     A debtor should be authorized to sell assets out of the ordinary course of business pursuant to Bankruptcy Code section 363 if it demonstrates a sound business purpose for doing so.  *See In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del . 2003) (finding that a court should approve a debtor's use of assets outside ordinary course of business if debtor can demonstrate a sound business justification for proposed transaction); *see also In re Montgomery Ward Holding Corp.*, 242 B.R.147, 154 (Bankr. D. Del. 1999) (finding that the debtor's sound business purpose justified its sale of the assets outside of the ordinary course of business).

33.     Indeed, the paramount goal of a chapter 11 process is to maximize the proceeds received by the estate.  *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) ("[A] primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand."); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986) (noting the fairness and reasonableness of prices); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the ...debtor's duty...is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. v. Champion Intl Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)); *In re Summit Global Logistics, Inc.*, No. 08-11566, 2008 WL 819934, at *14 (Bankr. D.N.J. Mar. 26, 2008) (describing a proposed transaction as one that "maximize[d] value and return to interested parties.").  To that end, courts have recognized that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate of a debtor and therefore are appropriate.  *See Integrated*, 147

B.R. at 659 (providing that such procedures "encourage bidding and to maximize the value of the debtor's assets."); *In re Fin. News Network Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("[C]ourt-imposed rules for the disposition of assets [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate.").

34.     With this in mind, courts have deferred to a debtor's business judgment in the context of bidding and auction procedures.  *See In re Trans World Airlines Inc.*, No. 01-0056, 2001 WL 1820326, at *10 (Bankr. D. Del. Apr. 2, 2001) ("It is not the function of a bankruptcy court to independently exercise a business judgment as to which proposal among competing proposals should be adopted by the debtor in effecting a § 363(b) sale.").

35.     In exercising their fiduciary duties and in the sound exercise of the Debtors' business judgment, the Debtors have determined that the Bidding Procedures are the most appropriate method for encouraging competing bids that will maximize creditor recoveries and that will ensure the value received for its assets is the highest and best the market can generate.

36.     The Bidding Procedures provide a framework to facilitate and entertain bids for the purchase of all or substantially all of the Debtors' assets and, if such bids are received, to conduct an Auction in an orderly yet competitive fashion, thereby encouraging bids that maximize the value realized from a sale of the Purchased Assets.  In particular, the Bidding Procedures contemplate an open and fair auction process with minimum barriers to entry and provide potential bidders with sufficient time to perform due diligence, and acquire the information necessary to submit a timely and well-informed bid..

37.     The Bidding Procedures provide the Debtors with an adequate opportunity to consider competing bids and select the highest and best offer for the purchase of substantially all the Debtors' assets. The Debtors therefore believe that submitting the purchase of its assets to a

market-based test will ensure maximum recovery for all stakeholders.  Accordingly, the Debtors and their stakeholders can be assured that the consideration obtained will be fair and reasonable and at or above market.  *In re Summit Global Logistics*, 2008 WL 819934, at *14.

38.     If the Debtors receive only one Qualified Bid, the Debtors will (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) the Debtors shall seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement.

39.     Similar bidding, auction and notice procedures have been previously approved by this Court in other chapter 11 cases. *See, e.g.*, *In re Achaogen, Inc.*, Case No. 19-10844 (BLS) (Bankr. D. Del. May 1, 2019); *In re Orexigen Therapeutics Inc.*, Case No. 18-10518 (KG) (Bankr. D. Del. Apr. 23, 2018); *In re Dendreon Corporation*, Case No. 14-12515 (PJW) (Bankr. D. Del. Dec. 17, 2014); *In re Tuscany Int'l Holdings (U.S.A.) LTD.*, Case No. 14-10193 (KG) (Bankr. D. Del. Mar. 21, 2014); *In re Oncure Holdings, Inc.*, Case No. 13-11540 (KG) (Bankr. D. Del. Jul. 24, 2013); *In re Protostar Ltd.*, Case No. 09-12659 (MFW) (Bankr. D. Del. Aug. 24, 2009); *In re Midway Games Inc.*, Case No. 09-10465 (KG) (Bankr. D. Del. June 3, 2009); *In re Intermet Corp.*, Case No. 08-11859 (KG) (Bankr. D. Del. May 12, 2009); *In re VI Acquisition Corp.*, Case No. 08-10623 (KG) (Bankr. D. Del Oct. 17, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del May, 13, 2008); *In re Global Home Products LLC*, Case No. 06-10340 (KG) (Bankr. D. Del May 4, 2006); *In re Russell-Stanley Holdings, Inc.*, Case No. 05-12339 (MFW) (Bankr. D. Del. Sept. 9, 2005); *In re Ultimate Elecs., Inc.*, Case No. 05-10104 (PJW) (Bankr. D. Del. Mar. 24, 2005).

40.     In sum, the Debtors believe that the proposed Bidding Procedures create an appropriate framework for expeditiously establishing that the Debtors are receiving the best and highest offer for the Purchased Assets.   Accordingly, the proposed Bidding Procedures are reasonable, appropriate, and within the Debtors' sound business judgment under the circumstances.

## B.     The Purchased Assets Should be Sold Free and Clear of Claims, Liens and Encumbrances Under 11 U.S.C. § 363(f).

41.     In the interest of attracting the best offers, the Debtors request authorization to sell the Purchased Assets free and clear of any and all liens, claims, encumbrances, and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and other interests attaching to the proceeds of the sale of the Purchased Assets and distributed as provided for in a further order of the Bankruptcy Court.

42.     Under section 363(f) of the Bankruptcy Code, a debtor may sell estate property free and clear of liens, claims, encumbrances, and other interests if one of the following conditions is satisfied:

> i. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> ii. such entity consents;
>
> iii. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> iv. such interest is in bona fide dispute; or
>
> v. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).   Because section 363(f) of the Bankruptcy Code is written in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Purchased

Assets "free and clear" of liens, claims, encumbrances, and other interests.  *See, e.g.*, *In re Dura Automotive Sys., Inc.,* 2007 WL 7728109, at *6 n.32 (Bankr. D. Del. Aug. 15, 2007).

43.     Furthermore, section 105(a) of the Bankruptcy Code grants the court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g., In re Trans World Airlines, Inc*., 2001 WL 1820325, at *6-*7 (Bankr. D. Del. Mar. 27, 2001) (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

44.     The Debtors will demonstrate at the Sale Hearing that the sale satisfies the requirements of section 363(f).  Accordingly, the Debtors request authorization to sell the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests.

**C.     A Successful Bidder Should be Entitled to the Protections of Bankruptcy Code Section 363(m).**

45.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See In re Abbotts Dairies of Pennsylvania, Inc*., 788 F.2d 143, 147 (3d Cir. 1986); *Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark BellFurniture Warehouse, Inc*., 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp*., Case No. 03-51524, 2007 WL 1428477 (Bankr. D.N.J. May 11, 2007); *In re Temtechco, Inc*., 1998 WL 887256, at *4 (D. Del. 1998).

46.     As noted above, any asset purchase agreement executed by a Successful Bidder will have been negotiated at arm's-length and in good faith in accordance with the Bidding Procedures and Bidding Procedures Order, with each of the parties represented by its own

advisors and counsel.  Accordingly, the Debtors request that the Sale Order include a provision that any Successful Bidder for the Purchased Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Debtors maintain that providing the Successful Bidders with such protection will ensure that the maximum price will be received by the Debtors for the Purchased Assets.

**D.      Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Should be Authorized.**

47.      To enhance the value of the Debtors' estates (by curtailing further administrative liability and eliminating substantial rejection claims), the Debtors request authority under section 365 of the Bankruptcy Code to assume and assign the executory contracts and/or unexpired leases associated with the Purchased Assets to the Successful Bidder.  The Debtors further request that the Sale Order provide that the assigned executory contracts and/or unexpired leases will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder(s) notwithstanding any provisions in such assigned contracts and/or leases, including those described in Bankruptcy Code sections 365(b)(2), (f)(1) and (f)(3), that prohibit such assignments.  In addition, the Debtors may reject executory contracts and unexpired leases in the Sale Order or pursuant to another order of the Bankruptcy Court.

48.      The Debtors may, subject to court approval, assume and assign or reject executory contracts and unexpired leases under Bankruptcy Code section 365.  11 U.S.C. § 365(a).  Courts routinely approve motions to assume and assign or reject executory contracts or unexpired leases upon a showing that a debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See, e.g.*, *In re Achaogen, Inc.*, Case No. 19-10844 (BLS) (Bankr. D. Del. May 1, 2019); *In re Orexigen Therapeutics Inc.*, Case No. 18-10518 (KG) (Bankr. D. Del. Apr. 23, 2018); *In re Fleming Co. Inc.*, 499 F.3d 300, 305 (3d Cir. 2007);

*Cinicola v. Scharffeberger*, 248 F.3d 110, 120 (3d Cir. 2001); *L.R.S.C. Co. v. Rickel Home Ctrs., Inc.* (*In re Rickel Home Ctrs., Inc.*), 209 F.3d 291, 298 (3d Cir. 2000); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992); *Sharon Steel National Fuel Gas Distrib. Corp.* (*In re Sharon Steel Corp.*), 872 F.2d 36, 39-40 (3d Cir. 1989); *In re NII Holdings, Inc.*, Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. Apr. 20, 2015); *In re Delia's, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Dec. 24, 2014); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).  The assumption and assignment of the executory contracts and/or unexpired leases related to the Purchased Assets is an integral component of the Sale, without which the Sale would not be a viable option.

49.     Section 365(b)(1) of the Bankruptcy Code requires that, if there has been a default in a debtor's unexpired lease or executory contract, other than certain nonmonetary defaults as set forth in the statute, such unexpired lease or executory contract may not be assumed unless, at the time of the assumption, (i) such default is cured or there is adequate assurance that such default will be cured, (ii) compensation or adequate assurance of compensation is provided for any actual pecuniary loss resulting from such default and (iii) adequate assurance of future performance under the lease is provided.  11 U.S.C. § 365(b)(1)(A)-(C).

50.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *EBG Midtown South Corp. v. McLaren/Hart Env. Eng' g Corp.* (*In re Sanshoe Worldwide*), 139 B.R. 585, 593 (S.D.N.Y. 1992); *see also In re Fleming Co. Inc.*, 499 F.3d 300, 305 (3d Cir. 2007); *Cinicola v. Scharffeberger*, 248 F.3d 110, 120 (3d Cir. 2001).

51.     As set forth above, pursuant to the terms of the proposed Bidding Procedures Order, the Debtors will send the Assignment and Rejection Notice to all counterparties to the

executory contracts and unexpired leases notifying such counterparties of the potential assumption by the Debtors and assignment to the Successful Bidder of such contracts and/or leases. The Assignment and Rejection Notice will also set forth the Cure Amount, if any, owing for each such contracts and/or leases according to the Debtors' books and records.

52.     Counterparties to such contracts and/or leases will be given sufficient time (as set forth herein and in the proposed Bidding Procedures Order) to object to the proposed Cure Amounts, if any, set forth in the Assignment and Rejection Notice. If no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the Debtors, the Successful Bidder(s) and the applicable non-Debtor counterparty. The payment of the Cure Amounts specified in the Assignment and Rejection Notice (or a different amount, either agreed to by the Debtors or resolved by this Court as a result of a timely-filed objection by the relevant non-Debtor counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the counterparties for any pecuniary losses under the applicable executory contract(s) and/or lease(s) pursuant to Bankruptcy Code section 365(b)(1), unless the Debtors determine, before the Sale Hearing, that a particular lease or contract is not truly executory, and does not need to be cured to transfer the Purchased Assets to the Successful Bidder.

53.     Bankruptcy Code section 365(f)(2)(B) states that a debtor may assign its unexpired leases and executory contracts if, *inter alia,* the assignee provides "adequate assurance of future performance." 11 U.S.C. § 365(f)(2)(B). If necessary, the Successful Bidder must submit, among other things, written evidence of the ability to provide adequate assurance of future performance under the applicable contracts or leases as set forth above and in the Bidding Procedures Order. The affected non-Debtor counterparties will also be able to challenge the

ability of the Successful Bidder to provide adequate assurance as provided in the Bidding Procedures Order.

54.     Any assumption and assignment of an assigned contract and/or lease will be subject to all of the provisions of such contract and/or lease, to the extent required by applicable law and in accordance with applicable provisions of the Bankruptcy Code.  The Bidding Procedures are designed to ensure that any Successful Bidder is financially able and prepared to undertake all of the relevant obligations under the assigned contracts and/or leases.  The Debtors, together with the relevant Successful Bidder, will establish, as necessary, at the Sale Hearing, the requisite adequate assurance of future performance pursuant to Bankruptcy Code section 365 with respect to the potential assumption and assignment of the applicable assigned contracts and/or leases.  Consequently, assumption and assignment of the assigned executory contracts and/or leases in connection with the Sale of the Purchased Assets is appropriate under the circumstances.

**E.      The Proposed Notice is Appropriate Under Bankruptcy Rule 2002 and Local Rule 2002-1.**

55.     The notices contemplated by the Bidding Procedures give notice of the proposed Sale including a disclosure of the time and place of an auction, the terms and conditions of the Sale, and the deadline for filing any objections.  The Debtors submit that the notice procedures comply with Bankruptcy Rule 2002 and include information regarding the Bidding Procedures necessary to enable interested bidders to participate in the Auction, and constitutes good and adequate notice of the Bidding Procedures and the other components of the Auction.  Therefore, the Debtors respectfully request this Court approve the proposed notice procedures.

56.     To reduce costs, the Debtors request relief from any requirement under Bankruptcy Rule 2002 and Local Rule 2002-1 that would otherwise require the Sale Notice to be

mailed to the approximately 300,000 current and former patients.  Because of the significant cost of printing and mailing the Sale Notice to this large group of potential claimants, and because the patients will have received notice of this Motion, rather than mailing the Sale Notice to all patients the Debtors propose to make the Sale Notice available to them in electronic format on the Case Website, which can be reviewed online or downloaded and printed free of charge.

**F.      Relief from Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

57.      Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for fourteen days, unless the court orders otherwise.

58.      To preserve the value of the Debtors' estates and limit the costs of administering and preserving the Purchased Assets, it is critical that the Debtors close the Sale of the Purchased Assets as soon as possible after all closing conditions have been met or waived.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

59.      The Debtors have provided notice of this Motion to: (a) the United States Trustee for the District of Delaware; (b) counsel to the Prepetition Lenders and DIP Lenders, (c) counsel to the Subordinated Lenders, (d) the creditors listed on the Debtors' consolidated list of thirty

(30) largest unsecured creditors, as filed with the Debtors' chapter 11 petitions; (e) all parties asserting a security interest in the Purchased Assets to the extent any such interest is reasonably known to the Debtors; (f) various federal, state, county and city tax and regulatory authorities; (g) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets or that have been identified by the Debtors or their advisors as a potential purchaser of the Purchased Assets; (h) the United States Department of Health and Human Services and the Centers for Medicare and Medicaid Services; (i) local, state and federal authorities and agencies that have issued licenses or permits to the Debtors with respect to the operation and use of the Purchased Assets; (j) the contract counterparties whose contracts are identified as being assigned; (k) all of the Debtors' creditors, and (l) all parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors request this Court to enter the Bidding Procedures Order, the Sale Order and further relief as the Court may deem just and appropriate.

July 30, 2019
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/*_____
Derek C. Abbott (No. 3376)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No.4227)
Tamara K. Mann (No. 5643)
Matthew O. Talmo (No. 6333)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Tel.: (302) 658-9200
Fax: (302) 658-3989
dabbott@mnat.com
cmiller@mnat.com

dbutz@mnat.com
tmann@mnat.com
mtalmo@mnat.com
ptopper@mnat.com

*Proposed Counsel for Debtors and Debtors in Possession*

12980015.6

# **EXHIBIT A**

**Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| THG Holdings LLC, *et al.*, | Case No. 19-11689 (JTD) |
| Debtors.[1] | Joint Administration Requested |
| | **RE D.I. _____** |

**ORDER PURSUANT TO SECTIONS 105, 363, 364, 365 AND 541 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004, 6006 AND 9007 AND DEL. BANKR. L.R. 2002-1 AND 6004-1 (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTORS; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT, ASSIGNMENT OR REJECTION OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) SCHEDULING THE AUCTION AND SALE HEARING; (D) APPROVING FORMS AND MANNER OF NOTICE OF RESPECTIVE DATES, TIMES, AND PLACES IN CONNECTION THEREWITH; AND (E) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for an Order Pursuant To Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All Assets of Debtors; (B) Approving Procedures for the Assumption and Assignment, Assignment or Rejection of Designated Executory Contracts and Unexpired Leases;(C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief* (the "Motion");[2] and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: THG Holdings LLC (8292); True Health Group LLC (9158); True Health Clinical LLC (5272); True Health Diagnostics LLC (9452); True Health IP LLC (5427); Outreach Management Solutions LLC d/b/a True Health Outreach (9424); Health Core Financial LLC d/b/a True Health Financial (6614). The Debtors' mailing address is 3803 Parkwood Blvd, Suite 400, Frisco, Texas 75034.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion or Bidding Procedures (as defined below), as applicable.

Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter an order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the statements of counsel, the First Day Declaration, any objections raised, and the evidence presented at the Bidding Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Debtors' bankruptcy estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY FOUND AND DETERMINED THAT:

A. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates, creditors, and other parties in interest will be served by the Court granting the relief requested in the Motion to be approved pursuant to this Bidding Procedures Order.

B. The Bidding Procedures enable the Debtors to maximize the value of their assets for the benefit of all stakeholders and constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit bids, and are reasonably calculated to enable the Debtors to pursue higher or otherwise better offers for the Purchased Assets.

C. The Debtors' option to accept a Stalking Horse Bid in the Debtors' business judgment (upon consultation with the Consultation Parties) and, upon such designation and after consultation with the Consultation Parties, seek Bankruptcy Court approval of any Bid

Protections on an expedited basis are reasonably calculated to enable the Debtors to further maximize the value of its assets by providing the opportunity to set the floor for bids and contributing to a robust auction process, for the benefit of the Debtors' estates, creditors, and other parties in interest.

D.      The Debtors' estates will suffer harm if the relief requested in the Motion to be approved by this Bidding Procedures Order is not granted.

E.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates and stakeholders will be served by, the Court scheduling or fixing dates pursuant to this Bidding Procedures Order for the (i) Bid Deadline (as defined below), (ii) Sale Objection Deadline (as defined below), (iii) Auction, (iv) Assignment Objection Deadline, and (v) Sale Hearing.

F.      The Sale Notice and Assignment and Rejection Notice are reasonably calculated to provide the Sale Notice Parties, the other Contract Counterparties, and other interested parties with proper notice of the (i) Bidding Procedures, (ii) Auction, (iii) Assignment and Rejection Procedures (including with respect to Cure Costs and the Assignment Objection Deadline), (iv) Sale Hearing, and (v) Sale.

G.      The Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

H.      Due, sufficient and adequate notice of the relief granted herein has been given to all parties in interest.

3

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits.

2.      The Bidding Procedures, which are attached hereto as **<u>Exhibit 1</u>** and incorporated herein by reference, are hereby approved in all respects and shall govern all bidders and bids, including those that may be submitted by Qualified Bidders at the Auction.

3.      Qualified Bidders seeking to submit bids for the Purchased Assets must do so in accordance with the terms of the Bidding Procedures and this Bidding Procedures Order.

4.      The DIP Lenders are a Qualified Bidder and pursuant to section 363(k) of the Bankruptcy Code, are authorized to submit a Credit Bid.

5.      As set forth in the Bidding Procedures, the Debtors have the option, but are not required to, designate a Stalking Horse Bidder in the Debtors' business judgment (upon consultation with the Consultation Parties).

6.      To the extent the Debtors designate a Stalking Horse Bidder, the Debtors shall within two (2) days thereof file the Stalking Horse Bidder Notice and, upon consultation with the Consultation Parties, seek Bankruptcy Court approval of any Bid Protections on an expedited basis.  The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement, which competing Qualified Bidders must then use as the basis to submit their Qualified Bids, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

7.      Notwithstanding that it may contain terms and conditions which may be inconsistent with the requirements for a Qualified Bid or other provisions of the Bidding Procedures, if the Debtors accept a Stalking Horse Bid, such Stalking Horse Bid shall be deemed

to constitute a Qualified Bid and such Stalking Horse Bidder shall be deemed to be a Qualified Bidder.

8.     The deadline for all competing bidders to submit a Qualified Bid (other than a Stalking Horse Bid) is September 13, 2019, at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"), as further governed by the Bidding Procedures.

9.     As further governed by the Bidding Procedures, if more than one Qualified Bid is received by the Bid Deadline, the Debtors may hold the Auction on September 17, 2019, at 10:00 a.m. (prevailing Eastern Time) in accordance with the Bidding Procedures at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801.

10.     Following the Auction, the Debtors shall promptly file with the Court the Supplement described in the Bidding Procedures, but shall not be required to serve the same on any parties-in-interest in this Chapter 11 Cases.

11.     If the Debtors receive only one (1) Bid that is a Qualified Bid (which may be a Stalking Horse Bid, as applicable), the Debtors, in their business judgment upon consultation with the Consultation Parties, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement (or the Stalking Horse Bidder Purchase Agreement, as applicable).

12.     The Court shall conduct the Sale Hearing no later than September 20, 2019, at _____ _.m. (prevailing Eastern Time), at which time the Court will consider approval of the Sale to the Successful Bidder.  Following the conclusion of the Auction, with the consent of the

Successful Bidder and subject to the Milestones (as defined in the interim and final orders, as applicable, authorizing the Debtors to obtain post-petition financing (the "DIP Order")), or as otherwise directed by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket for this Chapter 11 Cases.

13.    The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local transfer laws or requirements.

14.    The Sale Notice and Assignment and Rejection Notice substantially in the forms attached hereto as **Exhibit 2** and **Exhibit 3**, respectively, to this Bidding Procedures Order, are approved in all respects.  No other or further notice of the Bidding Procedures, Assignment and Rejection Procedures, the Sale Hearing, relevant objection or other deadlines, or the Sale is required.

15.    To be considered, any objection to the Sale must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) be filed on or before September 13, 2019, at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline").

16.     The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the Sale of the Purchased Assets to the Successful Bidder, including the transfer of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force and effect which they previously had against the Purchased Assets, subject to the

rights and defenses of the Debtors and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment of the Transferred Contracts to the Successful Bidder; provided, however, any party in interest may raise an objection at the Sale Hearing solely with respect to the outcome of the Auction.

17.     No Qualified Bidder or any other person or entity, other than a potential Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination or other similar fee or payment in connection with the Sale.

18.     The Assignment and Rejection Procedures, as described in the Motion, are hereby approved in all respects.  The failure to specifically include or reference any particular provision of the Assignment and Rejection Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Assignment and Rejection Procedures be authorized and approved in their entirety.

19.     As further governed by the Assignment and Rejection Procedures, the Assignment Objection Deadline is September 13, 2019, at 4:00 p.m. (prevailing Eastern Time). If a timely objection is filed and cannot be resolved consensually, such objection will be resolved at a hearing to be held on September 20, 2019, or on such other date prior to or after the Sale Hearing as the Debtors may designate.  Any Contract Counterparty that fails to file an Assignment Objection by the Assignment Objection Deadline in accordance with the Assignment and Rejection Procedures (i) shall be deemed to have forever waived and released any right to assert an Assignment Objection, (ii) to have consented to the assumption and assignment, or assignment, as the case may be, of their Transferred Contract without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect

to the Transferred Contract, (b) seeking additional amounts arising under the Transferred Contract prior to the closing from the Debtors or Successful Bidder, and (c) objecting to the assumption and assignment, or assignment, as the case may be, of its Transferred Contract to the Successful Bidder.

20.      Nothing herein shall amend or modify any provisions, terms, or conditions of the DIP Order or DIP Loan Documents (as defined in the DIP Order).  If the DIP Lenders submit a bid for all or any portion of the Purchased Assets, the DIP Lenders shall no longer be a Consultation Party unless and until the DIP Lenders irrevocably revoke such bid.

21.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or 6006(d), the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

22.      The Debtors are authorized and empowered to take such actions as may be necessary to implement and effectuate the terms and requirements established and relief granted in this Bidding Procedures Order.

23.      To the extent of any inconsistences between the Bidding Procedures and this Bidding Procedures Order, this Bidding Procedures Order shall govern.

24.      The Court shall retain jurisdiction over any matter or dispute arising from or relating to the Bidding Procedures or this Bidding Procedures Order.


Dated: _____, 2019
Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

**Bidding Procedures**

**BIDDING PROCEDURES**

The following procedures (collectively, the "Bidding Procedures") shall govern the proposed sale (the "Sale") of all or substantially all of the Debtors' assets (collectively, the "Purchased Assets")[1] and the assumption of certain of the Debtors' liabilities (collectively, the "Assumed Liabilities") of True Health Group LLC and its affiliated debtors and debtors in possession (the "Debtors") in Case No. 19-11689 (JTD) (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Purchased Assets and Assumed Liabilities will be set forth in a form asset purchase agreement (the "Form Purchase Agreement"), or if the Debtors designate a Stalking Horse Bidder (as defined below) upon consultation with (i) the DIP Lenders; (ii) the Subordinated Lenders; and (iii) any official committee of unsecured creditors appointed by the Office of the United States Trustee (a "Committee," and together with the DIP Lenders and the Subordinated Lenders, the "Consultation Parties") and with Bankruptcy Court approval, the asset purchase agreement of such Stalking Horse Bidder (the "Stalking Horse Bidder Purchase Agreement"), and made available to Potential Bidders (as defined below) as set forth herein.

These Bidding Procedures have been approved and authorized by an order of the Bankruptcy Court, dated _____, 2019 (D.I. __) (the "Bidding Procedures Order"), upon the motion of the Debtors dated July 28, 2019 (D.I. __) (the "Sale Motion"), which Bidding Procedures Order, among other things, (i) approved these Bidding Procedures; (ii) approved various forms and the manner of notice of respective dates, times, and places in connection therewith; (iii) scheduled the Auction (as defined below); (iv) scheduled the Sale Hearing (as defined below) and the objection deadline to the Sale; and (v) approved procedures for the assumption and assignment or rejection of designated executory contracts, including related objection deadlines and the bar date for submitting a rejection damages claim; and (vi) approved procedures for the rejection of designated executory contracts, including the bar date for submitting a rejection damages claim. In the event of a conflict between the terms of these Bidding Procedures and the terms of the Bidding Procedures Order, the terms of the Bidding Procedures Order shall control.

To receive copies of the (i) Sale Motion, all other exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) after a confidentiality agreement has been executed and delivered to the Notice Parties (as defined below), a copy of the Form Purchase Agreement, or if a Stalking Horse Bidder is designated, the Stalking Horse Bidder Purchase Agreement, kindly submit a request in writing (email and facsimile requests are acceptable) to (a) the Debtors' counsel: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott and Curtis S. Miller (Telephone: (302) 658-9200; email: dabbott@mnat.com and cmiller@mnat.com) and/or (b) the Debtors' investment banker: SSG Advisors, LLC, Five Tower Bridge, Suite 420 300 Barr Harbor Drive, West Conshohocken, PA 19428 Attn: J. Scott Victor and Teresa Kohl, (Telephone: (610) 940-1094; email: jsvictor@ssgca.com and tkohl@ssgca.com). Additionally, the Sale Motion and the exhibits thereto are available at https://dm.epiq11.com/TrueHealth.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order and any exhibits thereto, and, if not defined therein, in the Sale Motion and any exhibits thereto.

1

I.      **Due Diligence**

The Debtors will afford interested parties that have or put in place an executed, unexpired confidentiality agreement in form and substance acceptable to the Debtors and, at the Debtors' request, financial information that demonstrates such party's ability to submit a bid that complies with the requirements herein and the Bidding Procedures Order (each, a "Potential Bidder"), the opportunity to conduct reasonable due diligence, subject to parameters and restrictions that the Debtors deem appropriate upon consultation with the Consultation Parties.  The due diligence period shall extend through and include the Bid Deadline.

Neither the Debtors nor their advisors shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets or liabilities, the Debtors' contracts, or the Debtors to any person or entity (i) that is not a Potential Bidder or Qualified Bidder (as defined below), (ii) that is not in compliance with the requirements set forth herein and in the Bidding Procedures Order or (iii) after the Bid Deadline (as defined below).

II.     **Bid Deadline**

All Potential Bidders must deliver bids for the Purchased Assets (each a "Bid"), so as to be received on or before 4:00 p.m. (prevailing Eastern Time), on September 13, 2019 (the "Bid Deadline"), to the Debtors' investment banker: SSG Advisors, LLC, Five Tower Bridge, Suite 420 300 Barr Harbor Drive, West Conshohocken, PA 19428, Attn: J. Scott Victor and Teresa Kohl, (Telephone: (610) 940-1094; email:  jsvictor@ssgca.com and tkohl@ssgca.com), with copies provided contemporaneously to (i) counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott and Curtis S. Miller (Telephone: (302) 658-9200; email: dabbott@mnat.com and cmiller@mnat.com);  and (ii) counsel to Monroe Capital Management Advisors, LLC, in its capacity as a prepetition lender and administrative agent under the Debtors' debtor-in-possession financing facility, Proskauer Rose LLP, One International Place, Boston, MA 02110-2600,  Attn: Chad Dale (Telephone: (617) 526-9600; email: cdale@proskauer.com) (collectively, the "Notice Parties").

III.    **Qualified Bidder Requirement**

In order to qualify to submit a Qualified Bid (as defined below) and participate in the Auction, each Potential Bidder must: (i) deliver to the Notice Parties the most current audited (if available) and the latest unaudited financial statements and/or such other financial information evidencing the Potential Bidder's ability to (a) close the Sale within the time period prescribed in the Bidding Procedures Order and Form Purchase Agreement and (b) provide adequate assurance of future performance to counterparties to Transferred Contracts to be assumed and assigned to the Potential Bidder.  In addition, if the Potential Bidder is an entity formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, the Potential Bidder must deliver to the Notice Parties current audited (if available) and the latest unaudited financial statements and/or such other relevant financial information as may be requested by the Debtors of each equity holder of such Potential Bidder, *which equity holders must also guarantee the obligations of such Potential Bidder on terms reasonably acceptable to the Debtors*, evidencing the Potential Bidder's ability to (x) close the Sale within the time period prescribed in the Bidding Procedures

Order and Form Purchase Agreement (or Stalking Horse Bidder Purchase Agreement, as applicable) and (y) provide adequate assurance of future performance to counterparties to Transferred Contracts to be assumed and assigned to the Potential Bidder.

The Debtors, upon consultation with the Consultation Parties, shall determine whether a Potential Bidder has complied with the foregoing requirements and has qualified to submit a Qualified Bid and participate in the Auction (each such Potential Bidder, a "Qualified Bidder"), and the Debtors shall provide prompt written notice of such determination to any such Potential Bidder; provided, that, the Debtors may waive any of the foregoing requirements in the Debtors' reasonable discretion upon consultation with the Consultation Parties; provided, further, the Debtors shall not be required to consult with any Consultation Party during the Auction process to the extent such Consultation Party has submitted a Qualified Bid or has had a Qualified Bid submitted by one of its members, unless and until such party irrevocably revokes such bid.

The Debtors may request additional information from a Potential Bidder or Qualified Bidder at any time prior to the Sale closing in order to evaluate such bidder's ability to bid at the Auction over and above its initial offer in its Qualified Bid, consummate the Sale, and fulfill its obligations in connection therewith.  Each Potential Bidder or Qualified Bidder shall be obligated to provide such additional information within two (2) Business Days of receiving such requests as a condition to participating further in the Auction and Sale processes; provided, however, that additional information requests made by the Debtors during the Auction in connection with a Qualified Bidder's ability to continue to bid at the Auction over and above its initial offer in its Qualified Bid shall, in the Debtors' reasonable discretion upon consultation with the Consultation Parties, be satisfied prior to such Qualified Bidder submitting any further bids at the Auction.  The failure to comply with such requests shall disqualify such Potential Bidder or Qualified Bidder.

For purposes of these Bidding Procedures, the Stalking Horse Bid, if any, shall be deemed to constitute a Qualified Bid and the Stalking Horse Bidder, if any, shall be deemed to be a Qualified Bidder, as applicable.

## IV.    Requirements of a Qualified Bid

A "Qualified Bid" shall mean a bid submitted by a Qualified Bidder that:

A. Is made in writing;

B. Is submitted prior to the Bid Deadline;

C. Designates which of the Purchased Assets the Qualified Bidder proposes to purchase;

D. Designates which of the Assumed Liabilities the Qualified Bidder proposes to assume;

E. Designates which of the Transferred Contracts the Qualified Bidder proposes to have assumed and assigned to it and which Transferred Contracts it wishes the

3

Debtors to reject, if it is the Successful Bidder (as defined below), or the Debtors' rights and interests therein sold and transferred, as the case may be;

F.  Includes a binding, definitive and fully executed asset purchase agreement which (a) shall be in form and substance substantially similar to the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable, and marked to reflect only those changes required as a condition of such Qualified Bidder's to closing the Sale, (b) except for a Stalking Horse Bidder, shall not contain any provisions entitling such Qualified Bidder to any break-up fee, expense reimbursement or other bid protections of any kind (c) waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of the bid or participation in any auction, and (d) otherwise contains terms and conditions that are more favorable to the Debtors than those set forth in the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable.   An asset purchase agreement, together with its schedules and exhibits, submitted in accordance with these Bidding Procedures, shall be referred to herein as a "Qualified Bidder Purchase Agreement".

G.  To the extent a bid is for assets that are subject to a Stalking Horse Bid, the value of the purchase price included in such bid must equal at least the value of the purchase price set forth in such Stalking Horse Bid plus the amount of the Bid Protections provided to such Stalking Horse Bidder, as set forth in the Stalking Horse Bidder Notice describing such Stalking Horse Bid, plus the Overbid Amount (as defined below);

H.  To the extent a prospective bidder is holding a perfected security interest in any of the Debtors' assets, such prospective bidder may seek to credit bid all or a portion of its claims for its respective collateral (each such bid, a "Credit Bid") in accordance with section 363(k) of title 11 of the United States Code (the "Bankruptcy Code"); provided, that, (i) a Credit Bid may only be applied to reduce the cash consideration for the Debtors' assets in which the credit bidding party holds a perfected security interest; (ii) a Credit Bid must comply with, and shall be subject to, the terms of the DIP Orders;

I.  Unless a bid includes a Credit Bid, provides that the purchase price shall be paid in full in cash and/or non-cash consideration at the closing of the Sale; provided, however, that the value for such non-cash consideration shall be determined by the Debtors upon consultation with the Consultation Parties;

J.  Provides a good faith cash deposit (the "Good Faith Deposit") equal to 10% of the value of the Qualified Bidder's total proposed purchase price.  The Good Faith Deposit shall be paid by wire transfer to a segregated account with an escrow agent to be designated by the Debtors, pursuant to instructions to be provided upon request by a Qualified Bidder.  The Debtors reserve the right to increase, decrease or waive the Good Faith Deposit for one or more Qualified Bidders upon consultation with the Consultation Parties.  Such Qualified Bidder's Qualified Bidder Purchase Agreement shall provide that the Good Faith Deposit shall be

4

forfeited to the Debtors in the event of a breach thereof (after giving effect to any applicable notice and cure periods) by such Qualified Bidder;

K. Provides that such bid shall be open and irrevocable until the earlier of:

　1. such bid being determined by the Debtors not to be a Qualified Bid;

　2. if such bid is not chosen by the Debtors at the Auction to be the Successful Bid or Back-Up Bid (as each such term is defined below), the date of entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder;

　3. if such bid is chosen by the Debtors to be the Successful Bid, the date which is the earlier to occur of: (i) the closing of the Sale to such Successful Bidder, and (ii) two days following the date the order approving the Sale to the Successful Bidder shall have become a final, non-appealable, order ("Final Order");

　4. if such bid is chosen by the Debtors to be the Back-Up Bid, the date which is the earlier to occur of: (i) the date of closing on the Sale to the Successful Bidder, and (ii) twenty-five (25) Business Days following the date the order approving the Sale to the Successful Bidder shall have become a Final Order; provided, that if the Successful Bidder shall fail to close on its purchase of the Purchased Assets during the period set forth above, (x) the Back-Up Bid shall continue to remain open and irrevocable, (y) the Back-Up Bidder shall be deemed to be the Successful Bidder, and (z) it shall close on the Sale within ten (10) Business Days of becoming the Successful Bidder;

L. (i) Includes an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct all due diligence regarding the Debtors' assets prior to submitting its bid and that it has relied solely upon its own independent   review, investigation and/or inspection of any documents and/or assets in making its bid, and (ii) confirms the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the Sale and does not include any due diligence contingencies;

M. Does not contain any financing contingencies or any other contingencies not set forth in the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable;

N. Provides evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) evidencing the authority of the Qualified Bidder to make a binding and irrevocable Qualified Bid and to consummate the Sale if such Qualified Bidder is the Successful Bidder or Back-Up Bidder, as such bid may be improved prior to or at the Auction;

5

O. Confirms that the Sale will be completed in accordance with the timing set forth in the Bidding Procedures Order;

P. If the Qualified Bidder was formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, provides evidence which is reasonably satisfactory to the Debtors, from each of the equity holders of such Qualified Bidder demonstrating that such Qualified Bidder has, or will have access to, the financial resources needed to consummate the Sale if it becomes the Successful Bidder, and that the use of such resources to consummate the Sale has been authorized and approved by such entity's board of directors (or comparable governing body);

Q. Certifies that the Qualified Bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale; except that the Debtors may facilitate a submission of a Qualified Bid by one or more unrelated Qualified Bidders;

R. Is not conditioned on the receipt of any third party approvals or consents (excluding required Bankruptcy Court approval and required governmental, licensing or regulatory approval or consent, if any) other than third party approvals or consents that are deemed reasonable, as determined by the Debtors upon consultation with the Consultation Parties; and

S. Sets forth the representatives that are authorized to appear and act on behalf of such Qualified Bidder in connection with the proposed transaction and the Auction.

All Qualified Bids will be considered by the Debtors; bids other than Qualified Bids will not be considered. The Debtors may evaluate bids on numerous grounds, including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtors. For the avoidance of doubt, the presence of any governmental, licensing, regulatory or other approvals or consents in a bid or other contingencies, and the anticipated timing or likelihood of obtaining such approvals or consents or resolving such contingencies, may be grounds for the Debtors to determine that such bid (i) is not a Qualified Bid or (ii) is not higher or otherwise better than any other Qualified Bid.

Additionally, notwithstanding the foregoing, the Debtors reserve their rights to waive any of the aforementioned requirements and consider any Potential Bidder to be a Qualified Bidder upon consultation with the Consultation Parties.

## V.    Receipt of Qualified Bids

If the Debtors receive only one (1) Bid that is a Qualified Bid, the Debtors, in their business judgment upon consultation with the Consultation Parties, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement.

If the Debtors receive two (2) or more Qualified Bids, the Debtors will conduct an auction (the "Auction").

## VI.    Stalking Horse and Bid Protections

The Debtors are authorized, but not obligated, pursuant to the Bidding Procedures Order, to designate a Qualified Bidder as a stalking horse bidder (the "Stalking Horse Bidder") in the Debtors' business judgment (upon consultation with the Consultation Parties without the necessity of a further hearing or authorization of the Court. Any Qualified Bid submitted by a Stalking Horse Bidder, a "Stalking Horse Bid".

The Debtors, upon the designation of a Stalking Horse Bidder, shall, in the Debtors' business judgment (upon consultation with the Consultation Parties, seek Bankruptcy Court approval on an expedited basis to agree to (i) pay the Stalking Horse Bidder a percentage of the purchase price set forth in its Qualified Bidder Purchase Agreement (but not as such purchase price may be increased at the Auction) for the Purchased Assets as a break-up fee (the "Break-up Fee"); and (ii) reimburse the Stalking Horse Bidder in a certain amount for its actual and documented third-party fees and costs incurred in connection with its Qualified Bid (the "Expense Reimbursement", and together with the Break-up Fee, the "Bid Protections"), in the event the Stalking Horse Bidder is not the Successful Bidder at the Auction, if the Debtors determine in the exercise of their business judgment (upon consultation with the Consultation Parties) that granting the Bid Protections is in the best interests of the Debtors' estates and creditors. To the extent the Debtors designate a Stalking Horse Bidder in the Debtors' business judgment (upon consultation with the Consultation Parties), the Debtors shall within two (2) days thereof file a notice of such determination with the Bankruptcy Court (the "Stalking Horse Bidder Notice") and seek Bankruptcy Court approval of any Bid Protections on an expedited basis. The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement. Competing Qualified Bidders must then use the Stalking Horse Bidder's Qualified Bidder Purchase Agreement as the basis to submit their Qualified Bids, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

## VII.    Auction Process

**The Auction, if any, will take place at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, on September 17, 2019, commencing at 10:00 a.m. (prevailing Eastern Time).**

If the Debtors proceed with the Auction, the following rules and procedures shall apply (subject to Article XII hereof):

A.    Prior to the Auction, upon consultation with the Consultation Parties, the Debtors will select the highest Qualified Bid it has received to serve as the opening bid at the Auction, which may be a Stalking Horse Bid (the "Baseline Bid");

B.    As soon as practicable and prior to the commencement of the Auction, the Debtors will provide all Qualified Bidders (including by email or telefax) with a

written notice identifying all of the Qualified Bidders and which Qualified Bid has been chosen as the Baseline Bid;

C.      Each Qualified Bidder, and its representatives and advisors, who has submitted a Qualified Bid shall be eligible to attend and make any subsequent bids at the Auction. Each Qualified Bidder must appear in person or through a duly authorized representative who has the legal authority to bind the Qualified Bidder at the Auction (and who must provide the Debtors with written evidence of such authority prior to the Auction which is reasonably satisfactory to the Debtors), or they shall not be entitled to attend or participate at the Auction;

D.      The Consultation Parties and all creditors of the Debtors, together with their respective professional advisors and representatives, may attend the Auction. **Parties who intend to attend the Auction must provide counsel for the Debtors at least one (1) business days' written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements**;

E.      All Qualified Bids shall be placed on the record at the Auction, which shall be transcribed, videotaped or audiotaped in the reasonable discretion of the Debtors;

F.      Each Qualified Bidder will have the right to make additional modifications or improvements to its Qualified Bidder Purchase Agreement, that make its bid higher or otherwise better, at any time, prior to, or during, the Auction which are consistent with these Bidding Procedures and the Bidding Procedures Order;

G.      Bidding shall commence at the Baseline Bid.  The first overbid at the Auction (the "Minimum Initial Overbid") shall be in an amount not less than (i) the amount of the Baseline Bid plus (ii) $150,000 (the "Overbid Amount").   Thereafter, a Qualified Bidder may increase its Qualified Bid in any amount as long as each subsequent bid (each, a "Subsequent Overbid") exceeds the previous highest bid by at least $150,000 of additional cash and/or non-cash consideration; provided, however, that the value for such non-cash consideration shall be determined by the Debtors upon consultation with the Consultation Parties.

H.      Each bid made by a Qualified Bidder at the Auction must continue to meet, satisfy or comply with the requirements of a Qualified Bid, other than those applicable to the submission of an initial Qualified Bid;

I.      The Auction will continue with each Qualified Bidder submitting additional Subsequent Overbids in each round of bidding, after being advised of the terms of the then highest bid and the identity of the Qualified Bidder who made such bid, in each round of bidding.  Each Qualified Bidder must bid in each round or it shall be disqualified from further bidding at the Auction;

J.      The Auction will conclude when the Debtors determine, upon consultation with the Consultation Parties, that they have received the highest or otherwise best offer from a Qualified Bidder (the "Successful Bid").   The next highest or

otherwise best Qualified Bid submitted at the Auction, as determined by the Debtors upon consultation with the Consultation Parties, shall be the "Back-Up Bid". The Qualified Bidder submitting the Successful Bid shall be the "Successful Bidder" and the Qualified Bidder submitting the Back-Up Bid shall be the "Back-Up Bidder". In making these decisions, the Debtors will consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration offered, (iii) the value of Assumed Liabilities and Transferred Contracts the Qualified Bidder proposes to assume; (iv) the Qualified Bidder's ability to close the Sale at the amount of its last bid made at the Auction and the timing thereof, (v) indicia of good faith on the part of the Qualified Bidder, (vi) the terms and conditions of the Qualified Bidder Purchase Agreement, (vii) the requirements as to the assumption and assignment of executory contracts, (viii) the ability to provide adequate assurance of future performance to the counterparties to executory contracts being assumed and assigned, and (ix) the net benefit to the Debtors' estates;

K.    Prior to the conclusion of the Auction, the Debtors and the Successful Bidder shall enter into a definitive agreement based upon the Successful Bidder's Qualified Bidder Purchase Agreement previously submitted by the Successful Bidder and will make all related revisions to the proposed order approving the Sale to the Successful Bidder, in each case to reflect the results of the Auction;

L.    All Qualified Bids shall remain open and irrevocable for the time periods set forth in Article IV(I) above;

M.    Following the Auction, the Debtors will promptly file with the Bankruptcy Court a supplement (the "Supplement") that will inform the Bankruptcy Court of the results of the Auction. The Supplement will identify the Successful Bidder as the proposed purchaser of the Purchased Assets and attach (i) any revised proposed order approving the Sale to the Successful Bidder, (ii) a copy of the Qualified Bidder Purchase Agreement entered into by the Debtors and the Successful Bidder following the Auction, and (iii) any additional information or documentation relevant to the Successful Bid. The Supplement will also identify the Back-Up Bidder and the Back-Up Bid. The Debtors will file the Supplement on the docket for the Chapter 11 Cases as promptly as is reasonably practicable prior to the Sale Hearing, but will not be required to serve the same on any parties-in-interest in the Chapter 11 Cases;

N.    Following the close of the Auction, if the Successful Bidder shall fail to close the Sale because of a breach on the part of the Successful Bidder (after giving effect to any applicable cure periods or waivers), (i) the Back-Up Bidder shall automatically, and without the need for any action by the Debtors or the Bankruptcy Court, be deemed to be the Successful Bidder, (ii) the Back-Up Bid shall be deemed to be the Successful Bid, and (iii) the Debtors and Back-Up Bidder shall close the Sale within ten (10) Business Days following the date the Back-Up Bidder becomes the Successful Bidder, without the necessity of obtaining any further order of the Bankruptcy Court; and

9

O.     The Debtors reserve the right, in their business judgment upon consultation with the Consultation Parties, to make one or more adjournments to, or cancel, the Auction or to modify these Bidding Procedures to, among other things: (i) facilitate discussions between the Debtors, on the one hand, and one or more Qualified Bidders, on the other hand, (ii) allow the Debtors and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional documentation or information as the Debtors in their business judgment may require to determine such Qualified Bidder's ability to close the Sale, or (iv) facilitate higher or better bids.

## VIII.   Sale Hearing and Closing

The hearing to approve the Sale (the "Sale Hearing") shall take place in the courtroom of the Honorable Judge _____ in the United States Bankruptcy Court for the District of Delaware no later than September 20, 2019, at __:__ _.m. (prevailing Eastern Time).  Following the conclusion of the Auction, with the consent of the Successful Bidder (upon consultation with the Consultation Parties), or as otherwise directed by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket for the Chapter 11 Cases.  At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.  The closing on the Sale with the Successful Bidder shall occur not later than September 30, 2019.

## IX.   Assumption and Assignment Procedures for Executory Contracts

A.     Attached as **Exhibit 3** to the Bidding Procedures Order is the form of *Notice of (I) Debtors' Intent to Assume and Assign Designated Executory Contracts, (II) Cure Amounts Related to Designated Executory Contracts, and (III) Debtors' Intent to Reject Designated Executory Contracts* (the "Assignment and Rejection Notice").

B.     Attached as **Exhibit A** to the Assignment and Rejection Notice is a schedule of all executory contracts and unexpired leases the Debtors propose to assume and assign to the Successful Bidder listing the counterparties to such Transferred Contracts and the amount, if any, proposed to be paid to cure any defaults under such Transferred Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts").  In conjunction with its Qualified Bid, each Qualified Bidder shall designate which of such contracts or leases it wishes to have the Debtors assume and assign and which it does not desire the Debtors to assume and assign (the contracts and leases which the Successful bidder designated for assumption and assignment shall be referred to as the "Transferred Contracts").  To the extent any Transferred Contract is determined not to be an executory contract under and for purposes of section 365 of the Bankruptcy Code, the Debtors shall instead assign to the Successful Bidder all of the Debtors' right, title and interest in, to and under such contracts pursuant to section 363 of the Bankruptcy Code.  Prior to the effectiveness of any assignment of a Transferred Contract, the Successful Bidder shall, at its own cost, in addition to the purchase price, cure monetary

defaults under such Transferred Contract, if any, which are capable of being cured unless any counterparty agrees to a different treatment of such cure amounts. The Successful Bidder shall have no liability for any damages arising from rejection, breach or termination of any contracts or leases which it has not designated as Transferred Contracts.

C.  Objections to the assumption and assignment or sale and transfer of the Debtors' rights and interests of and in any of the Transferred Contracts (an "Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Cases by September 13, 2019 (the "Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such counterparty, and include complete contact information for such counterparty (including address, telephone number and email address), (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served on the following, so as to be actually received by them on or before 4:00 p.m. (prevailing Eastern Time) on the Assignment Objection Deadline:

-  ▪  Counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott and Curtis S. Miller (Telephone: (302) 658-9200; email: dabbott@mnat.com and cmiller@mnat.com);

-  ▪  The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane Leamy;

-  ▪  Counsel to each Qualified Bidder (contact information should be obtained from the Debtors' counsel (contact details are set forth above)); and

-  ▪  Counsel to the DIP Lenders: Proskauer Rose LLP, Christian Science Center-Belvidere/Dalton, Boston, MA 02110, Attn: Chad Dale, (Telephone: (617) 526-9600; email: cdale@proskauer.com).

D.  Any counterparty to a Transferred Contract that fails to file an Assignment Objection by the Assignment Objection Deadline (i) shall be deemed to have forever waived and released any right to assert an Assignment Objection, (ii) shall have consented to the assumption and assignment of, or sale and transfer of the Debtors' right, title and interest in, to and under, their Transferred Contract, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to the Transferred Contract, (b) seeking additional amounts arising under the Transferred Contract prior to the closing from the Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, and (c) objecting to the assumption and assignment of its Transferred Contract to the Successful Bidder.

E.     If a timely objection is filed and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held on September 20, 2019.

F.     Any Qualified Bidder may add to or remove contracts from its corresponding schedules at any time up to the conclusion of the Auction, and the Successful Bidder and Back-Up Bidder may add (but not remove) from its corresponding schedules at any time after the Auction but prior to the closing of the Sale. If the Successful Bidder and/or Back-Up Bidder shall have done so, the Debtors shall file an amended or supplemental Transferred Contract and Cure Schedule adding such contracts thereto (any such added contract, an "Additional Contract") within two (2) calendar days of being informed of such a determination and provide notice thereof (and in the case of an Additional Contract, provide the counterparty thereto with the Assignment and Rejection Notice along with the amended or supplemental Transferred Contract and Cure Schedule) to each affected counterparty. To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful Bidder, the Debtors will reject such an unassigned, executory contract or unexpired lease, or sell or transfer such unassigned, executory contract or unexpired lease in its reasonable discretion to the extent permitted by applicable law.

G.     Objections from any counterparty to an Additional Contract (an "Additional Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Cases no later than ten (10) calendar days after the Debtors have sent notice to such counterparty of its intention to assume and assign, assign, or reject such Additional Contract (as applicable, the "Additional Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such counterparty, and include contact information for such counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served upon counsel to (a) the Debtors and the United States Trustee, and (b) the Successful Bidder, and the Back-Up Bidder (addresses for the foregoing may be obtained from counsel to the Debtors), so as to be actually received by them on or before 4:00 p.m. (prevailing Eastern Time) on the Additional Assignment Objection Deadline.

H.     Any counterparty to an Additional Contract that fails to file an Additional Assignment Objection by the Additional Assignment Objection Deadline (i) shall be deemed to have forever waived and released any right to assert an Additional Assignment Objection and (ii) shall have consented to the assumption and assignment of, or sale and transfer of the Debtors' rights and interests in, as the case may be, such Additional Contract, without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to its Additional Contract, (b) seeking additional amounts arising under its Additional Contract at any time from the Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, and (c) objecting to the assumption

12

and assignment of its Additional Contract to the Successful Bidder or the Back-Up Bidder, as the case may be.

I.    If a timely objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held (i) on or before five (5) calendar days from the timely filing of the Additional Assignment Objection or (ii) such other date designated by the Bankruptcy Court.  Unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the Additional Contract underlying such objection shall be deemed to have been assumed and assigned to the Successful Bidder or the Back-Up Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

## X.    Failure to Consummate Purchase

Following the close of the Auction, if the Successful Bidder fails to consummate the Sale, and such failure is the result of a breach by the Successful Bidder of its obligations under its Qualified Bidder Purchase Agreement, the Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors and the Debtors shall have the right to pursue all of their other rights and remedies against the Successful Bidder.  If the Back-Up Bidder is later designated by the Debtors to be the Successful Bidder, the foregoing shall be read to apply to the Back-Up Bidder (and its guarantors, if any) in its capacity as the Successful Bidder.

## XI.   Good Faith Deposits

The Debtors shall return the Good Faith Deposits (with any interest accrued thereon as specified in the escrow agreement) of all Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, within five (5) Business Days following entry by the Bankruptcy Court of an order authorizing the Sale to the Successful Bidder.

Subject to Article X, the Good Faith Deposit of the Successful Bidder (with any interest accrued thereon as specified in the escrow agreement) shall be applied to, and deducted from, the Successful Bidder's obligations under the Successful Bid at the closing of the Sale.

The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder (with interest thereon at the rate specified, if any, in the escrow agreement) within five (5) Business Days following the date its bid is no longer required to be open and irrevocable as set forth in Article IV(I).  If the Back-Up Bidder is subsequently designated by the Debtors as the Successful Bidder as a result of the failure of the Successful Bidder to close on the Sale within the time period set forth in Article IV(I), the Back-Up Bidder shall be deemed to be the Successful Bidder and the Debtors and the Back-Up Bidder shall close the Sale within ten (10) Business Days of the Back-Up Bidder becoming the Successful Bidder.  Subject to Article X, the Good Faith Deposit of the Back-Up Bidder shall be held in escrow until such closing and applied (with any interest accrued thereon as specified in the escrow agreement) to its obligations at the closing of the Sale.  The Debtors reserve all of their rights regarding the return of all Good Faith Deposits, and the failure by the Debtors to timely return any deposit(s) shall not serve as a claim for breach of any bid(s) or create any default in favor of any bidder(s).

13

## XII.        Reservation of Rights

The Debtors are authorized to amend and modify these Bidding Procedures, upon consultation with the Consultation Parties, to impose additional terms and conditions on the proposed Auction and Sale of the Purchased Assets and assumption of the Assumed Liabilities (including the assumption and assignment of the Transferred Contracts), to account for any designation of a Stalking Horse Bidder, or to modify or eliminate any of the terms and conditions contained herein if, (i) in the Debtors' reasonable business judgment (upon consultation with the Committee, if any), such modifications would be in the best interest of the Debtors' estates and promote an open and fair sale Auction and Sale process including with respect to any Stalking Horse Bid and (ii) such modifications and/or additional terms and conditions are not materially inconsistent with the provisions of the Bidding Procedures Order.  Notwithstanding anything herein to the contrary, the Debtors may consider and accept bids from a single Qualified Bidder or from multiple Qualified Bidders for less than all or substantially all of the Purchased Assets upon consultation with the Consultation Parties.

12983985.5

14

## **EXHIBIT 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| THG Holdings LLC, *et al.*, | Case No. 19-11689 (JTD) |
| Debtors.[1] | Joint Administration Requested |

**NOTICE OF PROPOSED SALE OF ALL OR
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE
AND CLEAR OF ALL ENCUMBRANCES, OTHER THAN ASSUMED
LIABILITIES, AND SCHEDULING FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On _____, 2019, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Sale Motion)" with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking entry of two orders, in stages: (i) first, an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale of all or substantially all of the Debtors' assets (the "Purchased Assets"), (b) approving procedures for the assumption and assignment or rejection of designated executory contracts and unexpired leases (collectively, the "Transferred Contracts"), and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) approving forms and manner of notice of respective dates, times, and places in connection therewith, and (e) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) second, an order (the "Sale Order") (a) authorizing the Sale of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (collectively, "Encumbrances"), other than Assumed Liabilities, to the Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment and rejection of the Transferred Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief.

**I.    Bidding Procedures; Stalking Horse Bidder**

On _____, 2019, the Bankruptcy Court entered the Bidding Procedures Order [D.I. __], thereby approving the Bidding Procedures Relief and the Debtors' ability to designate a

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: THG Holdings LLC (8292); True Health Group LLC (9158); True Health Clinical LLC (5272); True Health Diagnostics LLC (9452); True Health IP LLC (5427); Outreach Management Solutions LLC d/b/a True Health Outreach (9424); Health Core Financial LLC d/b/a True Health Financial (6614). The Debtors' mailing address is 3803 Parkwood Blvd, Suite 400, Frisco, Texas 75034.

[2] Capitalized terms used but not defined herein shall have such meanings ascribed to them in the Sale Motion and the Bidding Procedures, as applicable.

Stalking Horse Bidder in the Debtors' business judgment (upon consultation with Consultation Parties).  Upon designating a Stalking Horse Bidder, the Debtors may seek expedited relief from the Bankruptcy Court to obtain approval of any Bid Protections (as defined in the Bidding Procedures) for the Stalking Horse Bidder.  In order for a Potential Bidder's bid to be considered to participate in the Auction, **it must comply with the Bidding Procedures, including that its bid must be delivered, so as to be received on or before 4:00 p.m. (prevailing Eastern Time), on September 13, 2019 (the "Bid Deadline")**, to the Debtor's investment banker: SSG Advisors, LLC, Five Tower Bridge, Suite 420 300 Barr Harbor Drive, West Conshohocken, PA 19428    Attn:  J.  Scott  Victor  and  Teresa  Kohl,  (Telephone:  (610)  940-1094; email:  jsvictor@ssgca.com and tkohl@ssgca.com), with copies provided contemporaneously to counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn, Derek C. Abbott and Curtis S. Miller (Telephone: (302) 658-9200; email: dabbott@mnat.com and cmiller@mnat.com);   and (ii) counsel to Monroe Capital Management Advisors, LLC, in its capacity as a prepetition lender and administrative agent under the Debtors' debtor-in-possession financing facility, Proskauer Rose LLP, One International Place, Boston, MA 02110-2600,  Attn: Chad Dale (Telephone: (617) 526-9600; email: CDale@proskauer.com) (collectively, the "Notice Parties").

To receive copies of the (i) Sale Motion, all other exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) a copy of the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable, kindly submit a request in writing (email and facsimile requests are acceptable) to (a) the Debtors' counsel: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott and Curtis S. Miller (Telephone: (302) 658-9200; email: dabbott@mnat.com and cmiller@mnat.com) and/or (b) the Debtors' investment banker: SSG Advisors, LLC, Five Tower Bridge, Suite 420 300 Barr Harbor Drive, West Conshohocken, PA 19428    Attn:  J.  Scott  Victor  and  Teresa  Kohl,  (Telephone:  (610)  940-1094; email: jsvictor@ssgca.com and tkohl@ssgca.com).  Additionally, the Sale Motion and the exhibits thereto are available at https://dm.epiq11.com/TrueHealth or those with PACER accounts     may     download     copies     from     the     Bankruptcy     Court's     website     at https://ecf.deb.uscourts.gov/.  In order for Potential Bidders to obtain access to the Debtors' dataroom, each Potential Bidder must first sign and deliver a confidentiality agreement to the Debtors and provide certain financial data, which must be acceptable to the Debtors.  Please refer to the Bidding Procedures for further information concerning submitting a Qualified Bid to participate at the Auction.

## II.    Sale Hearing and Closing

The Sale Hearing is scheduled for no later than September 20, 2019, at __:00 _.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware, United States Courthouse, 824 Market Street North, 3rd Floor, Wilmington, DE 19801, before the Honorable _____, United States Bankruptcy Judge.  The Sale Hearing is being held to approve the highest or otherwise best offer received for the Purchased Assets at the Auction, which, if any, will take place at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, on September 17, 2019, commencing at 10:00 a.m. (prevailing Eastern Time).  The Sale Hearing may be adjourned or

rescheduled with prior notice filed on the docket of the Debtor's Chapter 11 Cases or without prior notice by an announcement of the adjourned date at the Sale Hearing. The closing on the Sale with the Successful Bidder shall occur not later than September 30, 2019.

**THE DEADLINE TO OBJECT TO THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES (OTHER THAN THE ASSUMED LIABILITIES) TO THE SUCCESSFUL BIDDER (EACH, A "<u>SALE OBJECTION</u>") IS SEPTEMBER 13, 2019, at 4:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>SALE OBJECTION DEADLINE</u>").**

Any person or entity wishing to submit a Sale Objection must do so in writing and state with particularity the grounds for such objections or other statements of position. All Sale Objections shall be served so as to be actually received by no later than the Sale Objection Deadline by (i) counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott and Curtis S. Miller (Telephone: (302) 658-9200; email: dabbott@mnat.com and cmiller@mnat.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy Esq. (Telephone: (302) 573-6491 email: Jane.M.Leamy@usdoj.gov); and (iii) those parties who have filed notices of appearance and/or requested service of all motions and pleadings in this Chapter 11 Cases prior to the date of service thereof.

The failure of any person or entity to file and serve a Sale Objection on or before the Sale Objection Deadline (i) shall be deemed a consent to the Sale to the Successful Bidder and the other relief requested in the Sale Motion, and (ii) shall be a bar to the assertion, at the Sale Hearing or thereafter, to the Sale Motion, the Auction, the sale of the Purchased Assets (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all Encumbrances, other than the Assumed Liabilities); provided, however, any party in interest may raise an objection at the Sale Hearing solely with respect to the outcome of the Auction.

## III.    Debtors' Contracts and Leases

The Sale Order, if approved, shall authorize the assumption and assignment of the Transferred Contracts of the Debtors and the rejection by the Debtors of certain other designated executory contracts and unexpired leases. In accordance with the Bidding Procedures Order, individual notices setting forth the specific Transferred Contracts to be assumed by the Debtors and assigned to the Successful Bidder, or sold and transferred to the Successful Bidder, and the proposed Cure Amounts for such contracts will be given to all counterparties to the Transferred Contracts.  Such counterparties will be given the opportunity to object to the assumption and assignment, or sale and transfer, of a Transferred Contract and the proposed Cure Amount.

This Notice is subject to the full terms and conditions of the Bidding Procedures and the Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage all persons to review such documents and all other Sale-related documents in their entirety and to consult an attorney if they have questions or want advice.

Dated: _____, 2019
      Wilmington, Delaware

12984332.4

## EXHIBIT 3

**Assignment and Rejection Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| THG Holdings LLC, *et al.*, | Case No. 19-11689 (JTD) |
| Debtors.[1] | Joint Administration Requested |

**NOTICE OF PROPOSED (I) ASSUMPTION AND ASSIGNMENT OF DESIGNATED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) REJECTION
OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On _____, 2019, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Sale Motion)" with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking entry of two orders, in stages: (i) first, an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale of all or substantially all of the Debtors' assets (the "Purchased Assets"), (b) approving procedures for the assumption and assignment or rejection of designated executory contracts and unexpired leases (collectively, the "Transferred Contracts"), and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) approving forms and manner of notice of respective dates, times, and places in connection therewith, and (e) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) second, an order (the "Sale Order") (a) authorizing the Sale of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (collectively, "Encumbrances"), other than Assumed Liabilities, to the Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment and rejection of the Transferred Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief.  On _____, 2019, the Bankruptcy Court entered the Bidding Procedures Order [D.I. __], thereby approving the Bidding Procedures Relief.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO ONE OR MORE OF THE CONTRACTS OR LEASES REFERRED TO HEREIN.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: THG Holdings LLC (8292); True Health Group LLC (9158); True Health Clinical LLC (5272); True Health Diagnostics LLC (9452); True Health IP LLC (5427); Outreach Management Solutions LLC d/b/a True Health Outreach (9424); Health Core Financial LLC d/b/a True Health Financial (6614). The Debtors' mailing address is 3803 Parkwood Blvd, Suite 400, Frisco, Texas 75034.

[2] Capitalized terms used but not defined herein shall have such meanings ascribed to them in the Bidding Procedures and Bidding Procedures Order, as applicable.

## TRANSFERRED CONTRACTS

Attached as **Exhibit A** is a schedule of all executory contracts and unexpired leases (collectively, the "Transferred Contracts") the Debtors propose to assume and assign to the Successful Bidder (which may be a Stalking Horse Bidder, if applicable), listing the counterparties to such contracts (the "Contract Counterparties") and the amount, if any, proposed to be paid to cure any monetary defaults under the Transferred Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"). Attached as **Exhibit B** is a schedule of all executory contracts and unexpired leases the Debtor proposes to reject. The Successful Bidder reserves the right to revise these schedules in accordance with its Qualified Bidder Purchase Agreement and Bidding Procedures at any time prior to the closing on the Purchased Assets.

To the extent that any Transferred Contract is determined by an order of the Bankruptcy Court, or as between the Debtors and the applicable Contract Counterparty, not to be an executory contract under and for purposes of section 365 of the Bankruptcy Code, the Debtors shall instead sell, assign and transfer to the Successful Bidder all of the Debtors' right, title and interest in, to and under such Transferred Contracts pursuant to section 363 of the Bankruptcy Code. Prior to any such sale and transfer of a Transferred Contract, the Successful Bidder shall cure any monetary defaults or pay other amounts due under such Transferred Contract which are capable of being cured or paid as if such Transferred Contract had been subject to section 365 of the Bankruptcy Code.

IF YOU AGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR TRANSFERRED CONTRACT(S), YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION.

IF YOU DISAGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR CONTRACT(S), YOU MAY OBJECT TO THE PROPOSED CURE AMOUNTS NO LATER THAN **SEPTEMBER 13, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME).**

Objections to the assumption and assignment of any of the Transferred Contracts (including the Cure Amounts listed on **Exhibit A**) (an "Assignment Objection") must: (i) be made in writing and filed on the docket for the Case no later than **September 13, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "Assignment Objection Deadline"); (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged to be due by such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iv) be served on the following, so as to be actually received by them on or before 4:00 p.m. (prevailing Eastern Time) on the Assignment Objection Deadline:

- ▪ Counsel to the Debtors:  Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott and Curtis S. Miller (Telephone: (302) 658-9200; email: dabbott@mnat.com and cmiller@mnat.com);

- The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Jane M. Leamy Esq. (Telephone: (302) 573-6491 email: Jane.M.Leamy@usdoj.gov);

- Counsel to Monroe Capital Management Advisors, LLC, in its capacity as a prepetition lender and administrative agent under the Debtors' debtor-in-possession financing facility, Proskauer Rose LLP, One International Place, Boston, MA 02110-2600, Attn: Chad Dale (Telephone: (617) 526-9600; email: CDale@proskauer.com);

- Counsel to each Qualified Bidder (contact information should be obtained from the Debtors' counsel by contacting Daniel B. Butz and Matthew O. Talmo, at dbutz@mnat.com and mtalmo@mnat.com).

If you file an Assignment Objection satisfying the requirements herein, the Debtors and the Successful Bidder or Stalking Horse Bidder, as applicable, will confer with you in good faith to attempt to resolve any such Assignment Objection without Bankruptcy Court intervention. If the applicable parties determine that the Assignment Objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall resolve such Assignment Objection at a hearing to be held (i) on September 20, 2019, or (ii) such other date designated by the Bankruptcy Court.

If the Successful Bidder or Back-Up Bidder, in accordance with the Bidding Procedures, identifies additional executory contracts or unexpired leases that it wishes to add to the Transferred Contracts and Cure Schedule (each an "Additional Contract") (or wishes to remove a Transferred Contract from the Transferred Contracts and Cure Schedule), the Debtors shall, within two (2) calendar days of the Successful Bidder or Back-Up Bidder making such a determination, send a supplemental Assignment and Rejection Notice to the applicable Contract Counterparties to such executory contracts or unexpired leases added or removed from the Transferred Contracts and Cure Schedule. To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful Bidder, the Debtors will, in their sole discretion, either reject such an unassigned executory contract or unexpired lease to the extent permitted by law. In no event will the Successful Bidder be responsible for any unassigned executory contracts or unexpired leases.

Objections from any Contract Counterparty to an Additional Contract (an "Additional Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Cases no later than ten (10) calendar days after the Debtors have sent notice to such Contract Counterparty of its intention to assume and assign, assign, or reject such Additional Contract (as applicable, the "Additional Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served upon counsel to (a) the Debtors and the United States Trustee, and (b) the Successful Bidder, and the Back-Up Bidder (addresses for the foregoing may be obtained from

3

counsel to the Debtors), so as to be actually received by them on or before 4:00 p.m. (prevailing Eastern Time) on the Additional Assignment Objection Deadline.

If a timely objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held (i) on or before five (5) calendar days from the timely filing of the Additional Assignment Objection or (ii) such other date designated by the Bankruptcy Court. Unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the Additional Contract underlying such objection shall be deemed to have been assumed and assigned, or assigned, as the case may be, to the Successful Bidder or the Back-Up Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

**IF YOU FAIL TO TIMELY FILE AND PROPERLY SERVE AN ASSIGNMENT OBJECTION AS PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, AN OBJECTION TO A CURE AMOUNT (I) YOU WILL BE DEEMED TO HAVE FOREVER WAIVED AND RELEASED ANY RIGHT TO ASSERT AN ASSIGNMENT OBJECTION OR ADDITIONAL ASSIGNMENT OBJECTION, AS APPLICABLE, AND TO HAVE OTHERWISE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, OF THE DEBTOR'S RIGHT, TITLE AND INTEREST IN, TO AND UNDER, SUCH TRANSFERRED CONTRACT ON THE TERMS SET FORTH IN THIS ASSIGNMENT NOTICE AND THE FORM PURCHASE AGREEMENT TO BE ENTERED INTO WITH THE SUCCESSFUL BIDDER (II) YOU WILL HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF, OR SALE AND TRANSFER OF THE DEBTORS' RIGHT, TITLE AND INTEREST IN, TO AND UNDER, THEIR TRANSFERRED CONTRACT, AS THE CASE MAY BE, WITHOUT THE NECESSITY OF OBTAINING ANY FURTHER ORDER OF THE BANKRUPTCY COURT AND (III) YOU WILL BE BARRED AND ESTOPPED FOREVER FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE SUCCESSFUL BIDDER OR THE BACK-UP BIDDER THAT ANY ADDITIONAL CURE AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, MUST BE SATISFIED, UNDER SUCH TRANSFERRED CONTRACT.**

The Debtors' assumption and assignment, or sale and transfer, of a Transferred Contract is subject to approval by the Bankruptcy Court, and consummation of the closing of the Sale. If there is no closing, the Transferred Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

The inclusion of any document on the list of Transferred Contracts shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

Any Assignment Objection shall not constitute an objection to any of the other relief requested in the Sale Motion to be approved by the Sale Order (e.g., the sale of the Purchased Assets by the Debtors to the Successful Bidder free and clear of all Encumbrances other than

Assumed Liabilities).  Parties wishing to object to the other relief requested in the Sale Motion (excluding the Bidding Procedures) must timely file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bidding Procedures Order.

The dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas and/or in accordance with the Bidding Procedures Order.  Parties in interest are encouraged to monitor the electronic court docket.

This Notice is subject to the full terms and conditions of the Bidding Procedures and Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: _____, 2019
      Wilmington, Delaware

12984352.3

<u>Exhibit A</u>
(Assignment and Rejection Notice)

Transferred Contracts

| No. | Contract/Lease Party | Contract Counterparty | Contract/Lease Title | Date of Entry | Cure Amount |
|-----|----------------------|----------------------|----------------------|---------------|-------------|
| 1   | [X]                  | [X]                  | [X]                  | [X]           | $[X]        |

Exhibit B
(Assignment and Rejection Notice)

Rejected Executory Contracts and Unexpired Leases